In re KITTLE.

(Circuit Court, S. D. New York. July 23, 1910.)

1. GRAND JURY (§ 33*)—SUPERVISION—EVIDENCE.
　The evidence that shall be received before a grand jury is not subject to judicial control.
　[Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 33.*
　Review by trial court, of evidence given before grand jury, see note to McGregor v. United States, 69 C. C. A. 488.]

2. GRAND JURY (§ 36*)—SUPERVISION—WITNESSES.
　That a witness called to testify before a grand jury is interrogated with reference to an offense against the Sherman act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), which is the subject of a crime and of an offense laid in an existing indictment, does not confer on the witness a privilege to refuse to testify, as an answer when given is a complete bar to the pending prosecution, or any further prosecution for the offense, if it be pertinent to the subject-matter.
　[Ed. Note.—For other cases, see Grand Jury, Dec. Dig. § 36*]

3. WITNESSES (§ 304*)—SELF-INCRIMINATING TESTIMONY—PRIVILEGE OF WITNESS.
　The constitutional privilege of a witness against incrimination cannot be claimed, if all prosecution is barred from the date of the testimony, regardless of whether he has been indicted or not.
　[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 304.*]

4. CRIMINAL LAW (§ 42*)—PRIVILEGE—IMMUNITY—SHERMAN ACT.
　The provision of the act granting immunity to a witness testifying to violations of the Sherman act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]) is not retroactive; the constitutional guaranty being satisfied by a construction that the witness is not subject to future prosecution after giving his testimony.
　[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 45–48; Dec. Dig. § 42.*]

In the matter of Charles Kittle. Petition to relieve petitioner from examination. Denied.

Joline, Larkin & Rathbone, for petitioner.
Felix Frankfurter, Asst. U. S. Dist. Atty.

HAND, District Judge. The first point of the petitioner is certainly not valid. I cannot say what the purposes of the grand jury are in this inquiry. The mere fact that the names in each indictment are the same is of no consequence whatever. The same defendants may very well have committed two crimes, even two crimes against

the Sherman act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]). Since the proceedings of the grand jury are not open to scrutiny, and certainly will never become so, so far as I can lawfully prevent, I cannot say that they are about to indict the same defendants for the same offense. Nor, even if I could, should I try to interfere with their proceedings. Their bills are at most only accusations, and when they are found the courts will deal justly with the defendants and prevent their being twice harried.

One purpose of the secrecy of the grand jury's doings is to insure against this kind of judicial control. They are the voice of the community accusing its members, and the only protection from such accusation is in the conscience of that tribunal. Therefore, except in sporadic and ill-considered instances, the courts have never taken supervision over what evidence shall come before them, and, with certain not very well-defined exceptions, they remain what the Grand Assize originally was, and what the petit jury has ceased to be, an irresponsible utterance of the community at large, answerable only to the general body of citizens, from whom they come at random, and with whom they are again at once merged. A court shows no punctilious respect for the Constitution in regulating their conduct. We took the institution as we found it in our English inheritance, and he best serves the Constitution who most faithfully follows its historical significance, not he who by a verbal pedantry tries a priori to formulate its limitations and its extent. So much for the first point.

The second point is of the scope of the immunity clause in the Sherman act. The argument is that, since the immunity prescribed by the act includes prosecution, it is too late to question any one after he has been indicted, because part of the consideration for his testimony has already been taken from him. All this rests upon the assumption that I must infer that the present inquiry relates to the subject-matter of the present indictment, and that I should not have the right to do till the questions were asked. However, as in all probability they do relate to that subject-matter, I may as well dispose of it now, though out of order, and so obviate at least some of the constant recourse to the court. Therefore I shall assume that the inquiry is of the subject-matter of some crime, and, indeed, of the crime laid in the existing indictment. When so questioned, the witness must answer. Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819. And, when given, his answer will thereafter protect him from further prosecution. It will be a good bar to this very pending prosecution, if it be pertinent to the subject-matter.

The petitioner's theory goes further than this, and requires that the government should elect at the outset whether the person is to be witness or defendant, and, having once elected, that it should remain consistent. We must remember at the outset that the question raised has nothing whatever to do with the constitutional privilege against incrimination, because that privilege could not be claimed, if all prosecution were barred from the date of the testimony (Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819), regardless of whether the witness had already been indicted or not. The only necessary pro-

tection is that by no peradventure could the disclosure result in conviction (Mr. Justice Day, obiter, in Heike v. United States, 217 U. S. 425, 431, 30 Sup. Ct. 439, 54 L. Ed. ——), and to provide against that possibility it was enough to forbid any future criminal proceedings as soon as the testimony came out.

The question is, therefore, of the meaning of the statute, not of the scope of the Constitution. Is there any ground for saying that the bargain with the witness is, as it were, retroactive, so that he cannot get his quid pro quo by testifying, if he has already been indicted? I think not. As I have said, the statute would be constitutionally broad enough, if it forbade any future prosecution, and its scope is fairly inferable from its purpose. As the purpose was only to compel such testimony, and the Constitution was satisfied by the more limited construction, the fairer interpretation of the will of Congress is that it went no further than it had to go, and that they meant to give only a future immunity. No one has found any authority upon the question, but I think there can be small doubt of the correctness of this construction.

The petition is denied, and the petitioner directed to be sworn at 2 o'clock on Tuesday, July 26, 1910.