## BRZEZINSKI v. UNITED STATES.

### (Circuit Court of Appeals, Second Circuit. June 27, 1912.)

### No. 249.

**1. PERJURY (§ 32*)—TRIAL—EVIDENCE.**

On the trial of a defendant charged with perjury in knowingly giving false testimony before a grand jury, the testimony of the stenographer who took down the testimony as given and of any other person who heard and remembers it is competent to prove what was testified to by defendant.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 108–116; Dec. Dig. § 32.*]

**2. PERJURY (§ 11*)—MATERIALITY OF FALSE TESTIMONY.**

On the investigation by a grand jury of a charge of conspiracy to commit offenses against the United States by the underweighing of imported sugar, testimony that the accused attempted to bribe an employé of the government to conceal evidence of such false weighing discovered by him was material, and false testimony before the grand jury in respect to such attempt constituted perjury.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 38–54; Dec. Dig. § 11.*]

**3. PERJURY (§ 32*)—TRIAL—EVIDENCE.**

On the trial of a defendant for perjury in giving false testimony before a grand jury, which was directly contradictory of statements defendant had previously made under oath, testimony, as to a statement made by defendant between the times of such contradictory statements to another grand jury witness, that the latter could get a sum of money for going away somewhere, was competent as tending to show the motive which induced defendant to give the false testimony.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 108–116; Dec. Dig. § 32.*]

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against James O. Brzezinski. From a judgment of conviction, defendant brings error. Affirmed.

This cause comes here upon writ of error to review a judgment of the Circuit Court, Southern District of New York, convicting plaintiff in error under an indictment for perjury. The indictment charged that defendant was sworn as a witness before the grand jury, which was then engaged in an investigation into an alleged conspiracy to commit offenses against the United States, in connection with the underweighing of dutiable sugar and the participation of one Oliver Spitzer, among others, in said conspiracy; that in the course of such investigation it was a material matter of inquiry to determine whether or not Spitzer had on or about November 20, 1907, attempted to bribe defendant, who was at that time a special employé of the Treasury Department; that in response to questions put to him, the defendant on October, 1909, testified before the grand jury that Spitzer did not attempt to approach or bribe him and did not offer or promise to him any money or other thing of value. The indictment further charged that these statements were not true and that at the time of so swearing defendant did not believe them to be true.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

B. H. Goldstein, for plaintiff in error.

G. H. Dorr, Asst. U. S. Atty. (John Boyle and S. Hershenstein, of counsel), for United States.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The points raised on this writ of error are wholly technical. The record makes out a very clear case; it is difficult to see how any intelligent person, reading it, could escape the conviction that defendant in testifying before the grand jury perjured himself, deliberately and willfully, and that he did so, taking his chance of this indictment and conviction, because he was bribed to do so, in order to help Spitzer to escape the consequences of his conduct. The evidence in the case is peculiarly strong because the bulk of it consists of statements to the effect that Spitzer had tried to bribe him, made by the defendant; two of such statements having been made under the sanction of an oath.

[1] The first fact for the government to prove was the giving of the testimony charged in the indictment. It called the stenographer who took the notes of the proceedings before the grand jury. He testified that he took down the questions and answers that were put to Brzezinski on that day; that he made a transcription in typewriting from the notes, made this transcription himself, did not dictate it. The absence of the notes was accounted for; they belonged to the witness' employer and with all his other "notes" were destroyed when he died. The witness identified the transcript he had made; defendant's counsel for some mysterious reason objected to his testifying that he "transcribed correctly," but he did testify that he made it from the notes, and that the notes contained all the questions and answers. An assistant United States attorney who was present in the grand jury room also testified to the substance of what Brzezinski said on that occasion. It is contended that the court erred in admitting this testimony on the ground that it was "not the best evidence." This is a frivolous objection. Any one who has heard an oral statement made and remembers it may testify to what was said. The objection now advanced that it was error to admit the transcript of the notes because it had not been shown to be accurate is also without merit, since defendant himself objected to proof that it was accurate.

The other points may be disposed in the order in which they are presented in the brief.

[2] It is contended that the perjurious testimony was not material to the investigation with which the grand jury was concerned, viz., a conspiracy by Spitzer and others to commit offenses against the United States. What happened was this: Parr and defendant, both special employés of the treasury department, were on the dock, of which Spitzer was superintendent. They detected several instances of underweighing and also found the device (a steel spring) by means of which the scales were tampered with. Information as to this device had already been communicated to the government by one Whalley, who had invented it and subsequently turned informer. Defendant at once

seated himself by the scales where he could guard the spring, while Parr went to telephone for a scale expert. While defendant was thus on guard, Spitzer came to him and said that he did not want this thing exposed, that, if defendant would get away with "that iron" (the spring) and make out that the scales broke, he might name his own price and Spitzer would pay it. We are at a loss to see why this occurrence was not material to the investigation which the grand jury had in hand, and find nothing persuasive to the contrary in the argument of the brief of the plaintiff in error.

It is quite apparent that defendant who had originally stated that Spitzer tried to bribe him and had twice sworn to that statement, had subsequently, when called as a witness on Spitzer's first trial in Brooklyn, failed to make good his assertions. The United States attorney, therefore, when he began to examine him before the grand jury cautioned him as to the situation in which he stood and told him distinctly that he need not testify at all unless he wished to. He chose to take the stand, but his voluntary act in so doing did not make the testimony which he gave extrajudicial, nor did the United States attorney's statement to Brzezinski that his conduct at the trial in Brooklyn was the knob of the investigation change the character of the proceeding which was an investigation of the conspiracy above set forth. The proposition that the oath could not be lawfully administered to defendant because the investigation before the grand jury was of a charge against himself finds no support in the record.

It is further contended that perjury cannot be assigned upon defendant's testimony "as it consisted entirely of conclusions." This point may be disposed of by a recital of what the witness' testimony was. He stated that he discovered no attempt, on the part of Spitzer, to bribe him on that day: that no attempt was made by Spitzer to approach or bribe him; that he made no promise to give money to him: that Spitzer never did offer or promise him money or anything on that day.

Error is assigned because of a refusal to charge that the jury "might consider whether or not the words alleged to have been addressed by Spitzer to the defendant did in fact constitute a bribe or an attempt to bribe." The words attributed to Spitzer were these:

"I do not want this thing exposed. Do not let it get out. Make out the scales are broke. Get away with that iron. Name your price; I will pay it."

How an intelligent mind could possibly "consider" these words did not constitute an attempt to bribe, it is difficult to understand. However that may be, the court had already instructed the jury, in the charge, that if they concluded that Brzezinski thought that Spitzer had not offered him money or attempted to bribe him, they would have to acquit. This was all—if not more—than defendant was entitled to.

[3] It is further contended that the court erred in allowing the witness Whalley, the informer, to testify to a conversation with defendant some months after the discovery of the steel spring in use on the dock. In this conversation as Whalley narrated it, Brzezinski suggested that some one would be willing to offer him $7,500 if he

·would get off to some little town, and in reply to Whalley's question, "Who is going to give me $7,500?" "You can get it if you want it."

The objection advanced to this testimony is that it tended to show a distinct crime unconnected with the charge of perjury and was therefore incompetent and prejudicial. There was good ground for admitting this testimony. As we have seen, defendant immediately after the discovery of the steel spring asserted. several times that Spitzer tried to bribe him. Such testimony, if given on Spitzer's trial, would have been most damaging to the latter. At that time defendant was a trusted and efficient government officer: Two years later, before the New York grand jury, he testified that Spitzer had never tried to bribe him and had not offered him anything. Why was this? Was it a mere lapse of memory, an honest forgetfulness of what had taken place? Or was his first statement false? An effort, perhaps, to magnify himself as an incorruptible public servant. What was the motive of these inconsistent statements? Whalley's testimony gave the clue, and that clue the jury were entitled to have in order to solve the problem. In November, 1907, defendant refuses an offered bribe, saying, "There is nothing doing." The next year Spitzer's first trial comes on and defendant fails to support the government. Why.? The answer is found in Whalley's testimony, Whalley being also an important witness, that the defendant told him he could get $7,500 for going off somewhere, the inference being that defendant had already made some arrangement in reference to his testimony. The circumstance, that this testimony of Whalley tends to show the commission of another crime (the government does not concede that it does, and· we do not pass upon that point), does not make such an important piece of circumstantial evidence inadmissible. Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278.

It is not necessary to consider any of the other points submitted. The judgment is affirmed.