## UNITED STATES v. PROVIDENCE TRIBUNE CO.

### (District Court, D. Rhode Island. April 3, 1917.)

1. CONTEMPT ⊙➡9—STATUTE—NEWSPAPER PUBLICATION.

   The publication by a newspaper of the city in which a court is sitting of an article tending to obstruct the administration of justice in pending proceedings is within Judicial Code (Act March 3, 1911, c. 231) § 268, 36 Stat. 1163 (Comp. St. 1916, § 1245), giving courts power to punish contempt in case of misbehavior of any person in their presence or so near thereto as to obstruct the administration of justice.

   [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 8, 15–18.]

2. CONTEMPT ⊙➡14—INTERFERENCE WITH GRAND JURY.

   Interference with the proceedings of a grand jury in the performance of its functions is as truly a contempt of court as is interference with the proceedings of a petit jury.

   [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 36–41.]

3. CONTEMPT ⊙➡9—INTERFERENCE WITH GRAND·JURY—PUBLICATION OF PROCEEDINGS.

   Since secrecy is essential to proceedings of a grand jury, to prevent warning to offenders that their conduct is under investigation, to prevent tampering with witnesses, to protect the reputations of innocent persons whose conduct is or may be under investigation, and to protect witnesses before the grand jury, conspicuous publication in a newspaper of large circulation that the conduct of certain offenders is under investigation, and that certain witnesses or documentary evidence are or will be before the grand jury, is an interference with grand jury proceedings, which is a contempt.

   [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 8, 15–18.]

4. CONTEMPT ⊙➡9—NEWSPAPER·PUBLICATION—WITNESSES APPEARING BEFORE GRAND JURY.

   An article stating that certain named witnesses were taken before the grand jury, and that it was believed they had given the authorities much valuable evidence, and that prescriptions had been found in their possession which would play a prominent part in the future, was sufficient interference with the grand jury proceedings to constitute contempt.

   [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 8, 15–18.]

5. CONTEMPT ⊙➡9—NEWSPAPER PUBLICATION—FACTS OBTAINED BY OBSERVATION.

   That witnesses could state that they had been before the grand jury, and that persons could observe their entrance into the grand jury room, does not entitle a newspaper to publish such information conspicuously.

   [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 8, 15–18.]

Information against the Providence Tribune Company for contempt of court. Defendant's motion to dismiss information denied.

Harvey A. Baker, U. S. Atty., of Providence, R. I. (Wm. H. Camfield, Asst. U. S. Atty., of Providence, R. I., on the brief), for the United States.

J. J. Fitzgerald, of Pawtucket, R. I., for defendant.

BROWN, District Judge. This is an information filed by the United States Attorney for this district for alleged contempt of court in the publication of the following newspaper article relating to proceedings of the grand jury:

## PROMINENT PHYSICIANS INVOLVED IN
## FEDERAL WAR ON COCAINE DEALERS.

*Man and Woman Arrested on Conspiracy Charge May Become Witnesses for the Government.*

### BEFORE GRAND JURY

Four prominent physicians, one a State official and another a well-known Republican politician in a town not in Providence county, are said to be involved in the investigation which is being conducted into the illicit cocaine business by officials of the Internal Revenue Service here and which has already resulted in the arrest of two men and a woman. Other arrests are expected in the near future.

Two of the prisoners, it is said, have been permitted by the authorities to tell their story and may become witnesses for the Government. Another man, an Italian boot-black, well known in the downtown section of the city, was a visitor at the office of Edward J. Dunn, Deputy Collector of Internal Revenue, this morning.

Grace Adams and Aaron Hutchins, who were arrested last Monday on a charge of conspiracy to obtain drugs in violation of the Harrison Act, were brought from the County Jail at Cranston, this morning, and taken before the grand jury. When arraigned Monday, the couple pleaded not guilty and were held in $1000 each for a hearing next week.

### Valuable Information.

It is believed that the couple have given the authorities much valuable information. When arrested a number of prescriptions for pulverized morphine and cocaine were found in their possession and these will play a prominent part in the proceedings in the United States District Court in the near future.

Joseph Lewis, alias Jimmy Gardiner, colored, was arrested Monday evening and arraigned late yesterday afternoon before United States Commissioner Frank Healy on a charge of illegally selling and distributing cocaine and morphine. He pleaded not guilty and was held in $1000 bail for a hearing next Monday.

Lewis, who spent all of Monday night and all day yesterday in the cell room on the third floor of the Federal building, was so sick because of want of the drug that he could not be arraigned until after he had been treated by a physician. He presented a pitiable and heart-rending sight as he turned and twisted, begging the United States marshals to give him some "coke."

### Physicians Involved.

No one who has anything to do with the present investigation had any idea that the traffic in drugs was so extensive as it appears to be in Providence. Physicians widely known and heretofore of good reputation and supposed to be engaged in lawful practice are said to be deeply involved in the cocaine traffic.

The first two lines were in large letters at the head of the first page and extending its full width.

[1, 2] That the publication by a newspaper of the city in which a court is sitting of an article tending to obstruct the administration of justice in proceedings pending in that court is within section 268 of the Judicial Code is so well settled as to require no discussion. In re Independent Publishing Co. (D. C.) 228 Fed. 787;[1] U. S. v. Toledo Newspaper Co. (D. C.) 220 Fed. 458; Id., 237 Fed. 986, —— C. C. A. ——; U. S. v. Huff (D. C.) 206 Fed. 700.

"The grand jury, like the petit jury, is an appendage of the court, acting under the authority of the court." See Savin, Petitioner, 131

[1] See, also, 240 Fed. 849.

U. S. 267, 277, 9 Sup. Ct. 699, 33 L. Ed. 150, citing Heard .v. Pierce, 8 Cush. (Mass.) 338, 341, 54 Am. Dec. 757.

The powers of the grand jury, the scope of the inquiries which they may make, and the trust imposed in them are set forth in Hale v. Henkel, 201 U. S. 43, 61, 26 Sup. Ct. 370, 373 (50 L. Ed. 652):

"They are not appointed for the prosecutor or for the court; they are appointed for the government and for the people; and of both the government and people it is surely the concernment that, on one hand, all crimes, whether given or not given in charge, whether described or not described with professional skill, should receive the punishment, which the law denounces; and that, on the other hand, innocence, however strongly assailed by accusations drawn up in regular form, and by accusers, marshalled in legal array, should, on full investigation, be secure in that protection, which the law engages that she shall enjoy inviolate."

Interference with the proceedings of a grand jury in the performance of its functions is as truly a contempt of court as is interference with the proceedings of a petit jury, either in the course of a trial or during its deliberation.

[3] Secrecy is essential to the proceedings of a grand jury for many reasons. Publicity may defeat justice by warning offenders to escape, to destroy evidence, or to tamper with witnesses. Even when indictments have been found and presented to the court, secrecy is extended until those indicted have been arrested.

To warn offenders that their conduct is under investigation by a grand jury, that certain witnesses, or documentary evidence against them, are or will be before the grand jury, is especially serious, when this warning is given in a conspicuous and sensational way by a newspaper of large circulation. Even when it does not lead to the flight of an offender, it may result in the disappearance of witnesses and of documentary proof, and thus in a failure of the grand jury to secure evidence sufficient for an indictment.

Secrecy is also required in order that the reputations of innocent persons may not suffer from the fact that their conduct is under investigation, or has been investigated, by a grand jury. See Charge to Grand Jury by Mr. Justice Field, 2 Sawyer, 667, 677, Fed. Cas. No. 18,255.

Secrecy is further required for the protection of witnesses who may go before the grand jury, and to encourage them to make full disclosure of their knowledge of subjects and persons under investigation, without fear of evil consequences to themselves. Atwell v. U. S., 162 Fed. 97, 100, 89 C. C. A. 97, 17 L. R. A. (N. S.) 1049, 15 Ann. Cas. 253.

Premature disclosures may thus injuriously affect and embarrass the attorneys for the United States in the duty of presenting matters to the grand jury, the grand jury itself in the duty of investigation, and court and grand jury alike in giving protection to witnesses and to other persons, by preventing scandals and rumors respecting matters which may or may not be under investigation. Furthermore, such premature reports may go further and prejudice the mind of the public, thus affecting a trial which may follow .the action of the grand jury.

In Patterson v. Colorado, 205 U. S. 454, 463, 27 Sup. Ct. 556, 558 (51 L. Ed. 879, 10 Ann. Cas. 689), Mr. Justice Holmes said:

"When a case is finished, courts are subject to the same criticism as other people; but the propriety and necessity of preventing interference with the course of justice by premature statement, argument, or intimidation hardly can be denied."

See also U. S. v. United Shoe Mchry. Co. of New Jersey (C. C.) 198 Fed. 870.

We have next to consider the respondent's argument as to the meaning of the article. The seventh paragraph of the motion to dismiss is as follows:

"Seventh. That the said publication in the first paragraph thereof does not refer to any act or matter before the grand jury, but refers to investigations being conducted by the internal revenue service."

This is based upon the terms of a single paragraph, as if it were an isolated statement. It is an elementary rule of interpretation that the context must also be considered. The "Federal War on Cocaine Dealers," referred to in the heading, seems to include, not only action of the officials of the internal revenue service, but of the grand jury as well. The subheading "Before Grand Jury" relates generally to what follows.

The investigation of matters by the internal revenue officers, the presenting of the results of such investigations by the United States Attorney to the grand jury, and the action of the grand jury thereon, are so commonly understood to be all indispensable and closely related steps in any effective prosecution that we must regard as rather far-fetched the contention that the article does not set forth that any violations of internal revenue laws by any physicians were being considered by the grand jury. It is expressly stated that four prominent physicians are involved, and from the whole article is apparent the intention to disclose as near as seems advisable the identity of the persons to whom the scare head relates, and the names of witnesses and nature of evidence to be produced against them before the grand jury.

[4] If, however, we put upon the text the narrowest interpretation, there remains the fact that it states as a fact that the persons whose names are given were taken before the grand jury, and the following statement is made concerning them:

"Valuable Information.

"It is believed that the couple have given the authorities much valuable information. When arrested, a number of prescriptions for pulverized morphine and cocaine were found in their possession, and these will play a prominent part in the proceedings in the United States District Court in the near future."

As a justification it is urged that the persons who had been taken before the grand jury were at liberty to state the fact, and that other persons who knew said fact were at liberty to state it. It is also urged that there is not a disclosure of anything occurring within the grand jury room.

Plainly, however, it is a disclosure of what persons were before the grand jury during its session.

'For what purpose was this statement made, if not to give information as to what the grand jury was doing?

In certain cases, where offenders had been arrested and held in custody or by bail to answer to the action of a grand jury, or had previously been examined before a magistrate, such a statement might be of little consequence. On the other hand, however, at times when the grand jury is making an investigation, an announcement of the names of witnesses called might amount to all the information necessary to disclose the discovery of a crime and point directly to the person under investigation.

[5] That a person may have observed some act done by officials of the law, which he was not sworn to keep secret, does not justify him in publishing it at large. It is the duty of a citizen to assist, and not to frustrate, the work of the administration of justice.

The sessions of the grand jury are private; and though it may be necessary to admit through a door exhibits or persons, this does not justify the use of the corridor or approaches to the grand jury room for observation of who or what goes in. What is before the grand jury is, under the law, secret; and if one learns what is before the grand jury by seeing or being told what went in, he cannot treat this as a public fact, and use it for the purpose of disclosing what is secret under the law—all that occurs before the grand jury.

That there may be some leakage through the observations of individuals who happen to be in the courthouse corridors and are inclined to gossip is, however, a matter of small importance, which has no bearing upon the question whether a newspaper, whose business is publicity, and which gives the widest possible circulation of information, may employ special observers to find out who and what goes into the grand jury room, and by publishing it create or satisfy curiosity as to what the grand jury is doing. As a newspaper is in the business of creating or giving great publicity, and as the ordinary casual observer is not, there is no force in the argument that a newspaper may publish with impunity whatever an individual might repeat without danger of prosecution.

There is a difference between having one or two men know a thing which they have no pecuniary interest in spreading, and in having a whole town or city know a thing through the act of a corporation which has a pecuniary interest in spreading news as widely as possible.

It makes little difference whether information as to the grand jury is conveyed by direct statement, or by the collection and publication of circumstantial evidence of such character as to enable the public to draw a natural inference. The disclosure and its extent, and not the special mode of disclosure of what the law requires to be done in secret, is the important thing.

In Globe Newspaper Co. v. Commonwealth, 188 Mass. 449, 452, 74 N. E. 682, 684 [3 Ann. Cas. 761], the court, speaking through Chief Justice Knowlton, said:

"The writer had not the excuse that he was communicating facts of a public nature which it might be proper to publish. The article was a disclosure of the efforts of the commonwealth's officers, in the examination and preparation of evidence, information of which, if one chanced to obtain it, should have been treated as confidential."

In State v. Pennington, 3 Head (Tenn.) 299, 75 Am. Dec. 771, an indictment was sustained for the common-law offense of eavesdropping, in stealthily approaching the grand jury room for the purpose of listening to and overhearing what was said and done. The observation of the door of the grand jury room, in order to learn what is going on, by seeing who or what is going in, may differ in degree; but information so acquired is not of facts of a public nature, and the public has no right of access to the approaches to the grand jury room to procure such information. That in many cases, or in a particular case, no harm may be done, is of little consequence in determining the question of legal right. Many cases require the utmost secrecy, especially cases which recently have come before the courts relating to enterprises and offenses against the government and against neutrality.

The objections to the information in point of law are, in my opinion, without merit.

The following authorities are cited by the United States in support of the information: U. S. v. Toledo Newspaper Co. ([D. C.] 1915) 220 Fed. 458; In re Independent Publishing Co. ([D. C.] 1915) 228 Fed. 787; U. S. v. United Shoe Mchry. Co. of N. J. (D. C.) 198 Fed. 870; Russell on the Law of Crimes (7th Eng. Ed.) vol. 1, p. 540; Patterson v. Colorado, 205 U. S. 454, 462, 27 Sup. Ct. 556, 51 L. Ed. 879, 10 Ann. Cas. 689; Rapalje on Contempts, p. 72; In re Martindale, [1894] 3 Ch. 193, page 200; Globe Newspaper Co. v. Commonwealth, 188 Mass. 449, 74 N. E. 682, 3 Ann. Cas. 761; 28 Harvard Law Review, 605; Telegram, etc., Co. v. Commonwealth of Mass., 172 Mass. 294, 52 N. E. 445; 44 L. R. A. 159, 70 Am. St. Rep. 280; King v. Davies (1906) 1 K. B. Div. 32; King v. Fleet (1818) 1 B. & Ald. 379; Higgins v. Richards, [1912] 28 Law Times Rep. 202; Rex v. Parke, [1903] 2 K. B. Div. 432; King v. Tibbitts & Windust, [1902] 1 K. B. Div. 77; King v. Jolliffe (1791) 4 Term Rep. (Durn. & East) 285; In re Summerhayes (D. C. 1895) 70 Fed. 769; Atwell v. U. S. (1908) 162 Fed. 97, 100, 89 C. C. A. 97, 17 L. R. A. (N. S.) 1049, 15 Ann. Cas. 253; In re Martindale [1894] 3 Ch. Div. Law Rep. 193, 200.

Motion to dismiss denied.

Counsel will be heard upon the question of punishment.