## GOODMAN v. UNITED STATES.
### Nos. 9357, 9358, 9381, 9382.

Circuit Court of Appeals, Ninth Circuit.

Dec. 15, 1939.

Chalmers G. Graham and Felix T. Smith, both of San Francisco, Cal. (Clarence G. Morse, Truman R. Young, and Pillsbury, Madison & Sutro, all of San Francisco, Cal., of counsel), for appellant.

Thurman W. Arnold, Asst. Atty. Gen., James V. Hayes, Morris R. Clark, Samuel E. Neel, John V. Leddy, E. Compton Timberlake, and George F. Fisher, Jr., Sp. Assts. to Atty. Gen., and Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., for appellee.

Before WILBUR, DENMAN, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Involved here are appeals from an order of the District Court directing appellant to take an oath of secrecy before the grand jury convened in the district, and from a later order adjudging her in contempt for refusing to take the oath.

Four appeals have been prosecuted, two from the order directing the taking of the oath, and two from the judgment in contempt. The duplicate appeals were precautionary, counsel being in doubt whether the orders are civil or criminal in nature. The Government has moved to dismiss the appeals from the order directing the taking of the oath and the motions must be sustained. Palmuth et al. v. United States, 9 Cir., 107 F.2d 975, decided November 28, 1939. The appeals from the judgment in contempt remain to be disposed of.

The grand jury investigation is said to be concerned with activities possibly violative of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. Appellant, a

stenographer in the office of one Samuel Goodman, her father, was under subpoena to attend before that body. Upon her appearance the foreman tendered her the following oath: 'You do solemnly swear that you will keep secret the testimony you are about to give before the grand jury and that you will testify to the truth, the whole truth and nothing but the truth."

Appellant declined to take this oath because of its requirement of secrecy. The grand jury, through its foreman, orally reported the occurrence to the court and presented the witness for contumacy; whereupon the court directed appellant to take the oath, and upon her refusal to do so she was adjudged guilty of contempt and directed to be imprisoned for thirty days in the county jail.

It is argued, in support of the position taken by appellant, that the federal grand jury system is based upon the practice existing under the English common law; that at common law, while the grand jurors took an oath of secrecy, witnesses before them did not; that the federal courts have followed this practice and that there is no statutory authority for the requirement of an oath of secrecy on the part of a witness; and that none of the various reasons which have been advanced for the secrecy of grand jury investigations justifies the administration of such an oath. It is further contended that to require the oath would deprive appellant of the constitutional guaranties of freedom of speech, of protection from self-incrimination, and of the right to have the assistance of counsel,

as provided in the First, Fifth and Sixth Amendments, U.S.C.A.Const.

In a preliminary way it may be observed that there is no difficulty in understanding what the oath means. The parties are agreed that a witness who takes it is not deprived of the right to use his knowledge, but is precluded merely from disclosing what his testimony was—in other words, from revealing what occurred in the grand jury room. See State v. Kemp, 124 Conn. 639, 1 A.2d 761, 763, 764.

(a) The practice in grand jury proceedings in this country deviates in many respects from the English mode, Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652;[1] and there is no ground for believing that in America the system suffers from arrested growth. Deviations in method have continued, partly as the result of statutory enactments and in part through the evolution of local custom or usage. While in England an oath of secrecy seems not to have been exacted of grand jury witnesses, nevertheless the rule there, as stated by good authority, was that any person present before the grand jury was bound not to disclose what transpired. 1 Chitty Cr.Law 317; State v. Fasset, supra; 12 R.C.L. 1037. In this country the administration of such an oath to witnesses is by no means unheard of. In some of the states it has been required by statute[2] or by usage.[3] Counsel for the Government say that in thirty-seven districts in the federal jurisdiction it is the practice to require such oaths.[4] The grand jury minutes in the Northern District of California,

---

[1] See also United States v. Reed, 27 Fed.Cas. 727, No. 16134 (in which Circuit Justice Nelson pointed out the difference between the English and American practice in the finding of bills of indictment); United States v. Amazon Industrial Chem. Corp., D.C., 55 F.2d 254 (dealing with the Act of June 30, 1906, 34 Stat. 816, 5 U.S.C.A. § 310, authorizing the designation of special counsel to conduct grand jury proceedings, and with the practice of having stenographers in grand jury rooms); State v. Fasset, 16 Conn. 457. From the case last cited it appears that in Connecticut it was the practice to have witnesses sworn in the grand jury room by a justice of the peace or other magistrate, whereas at that time (1844) the procedure both in England and in the courts of the United States was to swear grand jury witnesses in open court. By § 1 of the act of Congress of March

3, 1865 (13 Stat. 500, 28 U.S.C.A. § 420) the court was relieved of this burden and the power of swearing the witnesses was delegated to the foreman.

[2] See Gutgesell v. State, Tex.Cr.App., 43 S.W. 1016; Misso v. State, 61 Tex. Cr.R. 241, 135 S.W. 1173; Addison v. State, 85 Tex.Cr.R. 181, 211 S.W. 225; Ex parte Welborn, 237 Mo. 297, 309, 141 S.W. 31.

[3] See State v. Kemp, 124 Conn. 639, 1 A.2d 761.

[4] The districts named by counsel are: Ala.,Middle D.; Ala.,N.D.; Ariz.; Ark., E.D.; Cal.,N.D.; Cal.,S.D.; Colo.; Fla., N.D.; Fla.,S.D.; Idaho; Ill.,N.D.; Ind., S.D.; Kans.; La.,E.D.; La.,W.D.; Mich.,E.D.; Mich.,W.D.; Minn.; Miss., N.D.; Miss.,S.D.; Mo.,E.D.; Mo.,W.D.; Neb.; Nev.; Ohio,N.D.; Okla.,E.D.; Okla.,N.D.; Okla.,W.D.; Oregon; Tex., E.D.; Tex.,N.D.; Tex.,S.D.; Tex.,W.D.;

we are told, disclose that an oath identical with the one involved here has been administered to witnesses since at least as early as 1919.[5]

Grand juries have been aptly characterized as "the voice of the community accusing its members." In re Kittle, C.C., 180 F. 946, 947. From earliest times it has been the policy of the law to shield the proceedings of these bodies from public scrutiny, and to this end the grand jurors themselves have always been sworn to keep their own counsel and that of the state or of the King.[6] Courts and text writers have advanced various reasons for this rule of privacy.[7] In part the purpose is to protect grand jurors, complainants and witnesses, so that the jurors may deliberate and vote without fear that their conduct will be disclosed elsewhere, and that those who testify may feel free to speak the truth without reserve. Other reasons for the rule are that if the accused should learn that his conduct is under investigation he is likely to flee arrest or to tamper with witnesses; and that one who is unjustly accused, but is exonerated by the refusal of the grand jury to indict, may not suffer injustice by a disclosure that he has been under investigation for the commission of a crime.

Further, the evidence taken before grand juries is confidential matter, to which the accused person has no right of access. Metzler v. United States, 9 Cir., 64 F.2d 203; United States v. American Medical Ass'n, D.C., 26 F.Supp. 429; United States v. Providence Tribune Co., D.C., 241 F. 524; State v. Broughton, 1846, 29 N.C. 96, 7 Ired. 96, 45 Am.Dec. 507.[8] So strict was the requirement of secrecy in this respect that anciently a grand juror who disclosed to an indicted person the evidence that had been given against him was held to be an accessory to the crime, if the crime was a felony, and a principal if the crime was treason; and later such conduct appears to have been denounced as a high misprision. 4 Bl.Com. 126; 1 Chitty Cr.L. 317. Nowadays, in the absence of special statute providing a different method of punishment,[9] a grand juror may be held in contempt for disclosing grand jury proceedings to an outsider. In re Summerhaves, D.C.N.D.Cal., 70 F. 769; cf. United States v. Providence Tribune Co., supra; 28 U.S.C.A. § 385.

The practice of requiring witnesses to take an oath of secrecy is a logical method of effecting the general policy of secrecy in respect of the proceedings of these bodies. In a broad sense grand

---

Utah; Wash., W.D.; Wisc.,E.D.; Wisc., W.D.

Counsel for appellant tell us that a similar survey made two years ago showed grand juries in thirty-three federal districts imposed the oath of secrecy upon witnesses, while fifty-two did not.

[5] Minutes for prior years are said not to be available. On the hearing below Judge St. Sure observed that "we have established a rule here that our proceedings before our grand juries are secret, and if custom has established, as a rule, that an oath shall be administered such as the foreman directed you to take, it seems to me you should have taken it. * * * "

[6] Consult Wigmore on Evidence (2d Ed.), vol. 5, § 2360, p. 146. As there given, a form of the English oath was that the grand jurors shall "diligently inquire and true presentment make of all such matters and things as shall be given you in charge; the King's counsel, your fellows', and your own, you shall keep secret; you shall present no one for envy, hatred or malice; but you shall present all things truly as they come to your knowledge, according to the best of your understanding: So help you God."

Substantially the same oath was approved by Justice Field in Charge To Grand Jury, 2 Sawyer 667, Fed.Cas.No. 18255.

[7] Wigmore on Evidence, 2d Ed., vol. 5, § 2360, p. 151; State v. Broughton, 29 N.C. 96, 97, 98, 45 Am.Dec. 507; United States v. Providence Tribune Co., D.C., 241 F. 524; United States v. American Medical Ass'n, D.C.,D.C., 26 F.Supp. 429; United States v. Amazon Industrial Chem. Corp., supra.

[8] In that case Chief Justice Ruffin remarked: "We think, too, that in furtherance of justice, the law may have intended to forbid a grand-juror from giving aid to one indicted, and thus found to be probably guilty, in his efforts to defeat the prosecution, by publishing the evidence before the grand-jury, and thus enabling him to counteract it, perhaps by foul means, after he knew where the case pinched. That would be betraying 'the State's counsel,' which is necessarily opened to the grand-jury."

[9] Both Texas and Missouri appear to have statutes making it a misdemeanor for a witness to disclose grand jury matters. See Texas cases cited in Note 2, supra; Rev.Statutes of Missouri 1929, § 3518, Mo.St.Ann. § 3518, p. 3137.

jurors themselves are witnesses; for a grand jury may act upon knowledge acquired either from their own observations or from the evidence of witnesses given before them. Hale v. Henkel, supra. As is well known, in investigations of corporate offenses under the Sherman Act the Government often finds it necessary to summon as witnesses officers and employees of the parties whose conduct is the subject of the inquiry. If witnesses are free to broadcast their testimony after leaving the grand jury room, or if they may, under pressure, disclose it to those under investigation or to their attorneys, grand jury proceedings would in large measure be shorn of their traditional privacy.

■■ There is no federal statute prescribing the form of oath, either of grand jurors or of witnesses, and none requiring either to take an oath of secrecy. In relation to the powers of district courts of the United States, § 268 of the Judicial Code, 28 U.S.C.A. § 385, provides: "The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority. Such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts." It would seem to be well within the discretionary power of the court to impose an oath of secrecy not alone upon grand jurors, but upon the witnesses, if the court believes the precaution necessary in the investigation of crime.[10] More particularly is this true where the grand jury has itself requested the imposition of the oath on the witness; for these semi-autonomous bodies are entitled to have the privacy of their investigations insured by all reasonable means.

■■ (b) The contention that the oath violates the right of the witness to freedom of speech is specious. The right is not absolute. Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470. Cf. Gitlow v. New York, 268 U.S. 652, 45 S. Ct. 625, 69 L.Ed. 1138; Schneider v. State of New Jersey, Town of Irvington, 60 S. Ct. 146, 84 L.Ed.——, decided Nov. 22, 1939. It has never been supposed that grand jurors are deprived of the constitutional right of free speech through the oath of secrecy which they take; and a witness summoned to appear before them is in no better case. Through their participation in the proceedings both grand jurors and witnesses occupy a special relationship to the state; and for reasons grounded in public policy, as we have seen, the testimony taken in these proceedings is privileged and confidential. Considerations of mere convenience or even of downright hardship on the part of the witness do not outweigh the policy of secrecy in respect of grand jury investigations.

■ Appellant disclaims the right to make disclosures to the world at large, but insists that she has the right to confide in her employer and her attorney. The former, however, has no more right to be advised of what has occurred before the grand jury than has any other member of the general public; and one of the purposes of the oath is to protect the witness against the importunities of her employer. The right of the witness to communicate with her attorney stands on a different footing, but whatever that right may be it is not grounded in the First Amendment.

(c) It is contended that the oath violates the guaranty of the Fifth Amendment that no person shall be compelled in a criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law. Also that it violates the Sixth Amendment in that it deprives appellant of the right to communicate with and obtain the aid, assistance and advice of counsel. The Government, on the other hand, contends that the oath does not infringe any recognized constitutional right guaranteed by these amendments.

■■ We have heretofore indicated our view that the court had authority, in its discretion, to impose an oath of secrecy

---

[10] "At the foundation of our federal government the inquisitorial function of the grand jury and the compulsion of witnesses were recognized as incidents of the judicial power of the United States." Blair v. United States, 250 U.S. 273, 279, 39 S.Ct. 468, 470, 63 L.Ed. 979.

upon the witness; but it is not to be assumed that the court intended through the imposition of the oath to deprive appellant of her legal right to consult with her attorney. Clearly, an oath of this character, like a statute, should if possible be given such construction as will harmonize it with the fundamental law. We find no difficulty in holding that this oath can—and that it must—be so construed as not to disable a person who takes it from exercising in a proper situation his right freely and in confidence to advise with his counsel. We do not have before us any situation in which that right has been infringed; and it is neither necessary nor appropriate here to consider all possible circumstances in which the right freely to consult counsel may become essential to the protection of the appellant.

It is proper to add that the court may at any time in the furtherance of justice remove the seal of privacy from grand jury proceedings. Metzler v. United States, supra; United States v. Farrington, D.C., 5 F. 343; Brzezinski v. United States, 2 Cir., 198 F. 65; Carroll v. United States, 2 Cir., 16 F.2d 951, certiorari denied 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880; 12 R.C.L. § 23, p. 1039; People v. Goldberg, 302 Ill. 559, 135 N.E. 84. The court may absolve a witness, as it may a grand juror, from his oath of secrecy; and, where that course is requested by the witness, it would be a clear abuse of discretion to deny it if the course is deemed essential to the witness' protection. However, the right of a person to avail himself of recognized constitutional safeguards does not depend upon the court's indulgence.

Affirmed.