[Crim. No. 1699. Fourth Dist. Sept. 29, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. EGBERT ROY MERSINO, Defendant and Appellant.

J. Perry Langford, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Harvey D. Unrot, Deputy Attorney General, for Plaintiff and Respondent.

WHELAN, J.—Defendant, aged 49 years, was charged in six counts of a grand jury indictment with performing lewd and lascivious acts upon the bodies of six different girls between June 1, 1963, and March 1, 1964. In the seventh count he was charged with a violation of section 288a, Penal Code, performed upon the body of the girl, aged 5 years, named as the victim in the fourth count of the indictment. Of the other girls, three were aged 10; one was aged 5; and one aged 7. Defendant was found not guilty as to the fourth count; guilty as to the others. It may be assumed that the jury had been instructed that if the conduct upon which count four was based was the same as that on which count seven was based, the defendant should not be found guilty on both of those counts.

The testimony of the complaining witnesses, if true and if accepted by the jury, was sufficient to support the verdicts.

In addition to testimony of the acts that characterized the offenses, one 10-year-old girl testified that in defendant's trailer he had had her put on a woman's brassiere and had asked her to put on a woman's girdle, both of which he had there; that he had in her presence placed a condom on his private parts; and that she had given him a photograph of herself.

After having been rejected by the hospital superintendent for hospital treatment as a mentally disordered sex offender, defendant was sentenced to state prison on five counts of violation of section 288 and one count of violation of section 288a, Penal Code, all sentences to run concurrently.

In the record on appeal appears a copy of a "Partial Order of Release," dated May 20, 1964, saying: "Case dismissed as to count one only as contained in the indictment." The record on appeal has been augmented to include a certified copy of order *nunc pro tunc* correcting the order of May 20, 1964, to show that count four rather than count one had been dismissed.

■■■ Defendant contends first that he was denied due process of law and the right of confrontation of witnesses, because the witnesses who testified before the grand jury were admonished not to discuss their testimony.

Defendant quotes statements made to two of the witnesses who testified before the grand jury, and promises obtained from those witnesses by the grand jury foreman; the quotations are from a reporter's transcript of the grand jury proceedings that resulted in the indictment.

The quoted statements were these: "Listen to this. You are admonished not to discuss or repeat at any time outside this jury room the questions that have been asked you in regard to this matter and your answers with the understanding that such disclosure on your part may be the basis for charges of contempt of court. All right, honey?

"THE WITNESS: Yes." (Reporter's transcript, pp. 9-10; Grand Jury transcript, p. 6.) and "Remember not to say anything, when you get out of this room. Will you remember, doll?

"THE WITNESS: Yeah." (Grand Jury transcript, p. 20.)

The result of those admonitions, it is argued, cut off defendant and his counsel from the right and opportunity to communicate with possible witnesses, a right adverted to in *Walker* v. *Superior Court,* 155 Cal.App.2d 134 [317 P.2d 130]; *People* v. *Cooper,* 53 Cal.2d 755 [3 Cal.Rptr. 148, 349 P.2d 964]; *Clark* v. *Superior Court,* 190 Cal.App.2d 739 [12 Cal. Rptr. 191].

Defendant argues that thus he has been denied the rights to confront and cross-examine witnesses and to obtain compulsory process for their production that have been guaranteed by article I, section 13, California Constitution, and the Sixth Amendment to the federal Constitution, which has been held to be applicable to the states by virtue of the Fourteenth Amendment. (See *Pointer* v. *Texas,* 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923].)

■■■ The wrongful interference with a defendant in preparing for his defense of a criminal prosecution, in the opportunity to interview witnesses who have appeared before a

grand jury in the proceedings leading up to the return of the indictment of the defendant, or witnesses whose statements given to the police or district attorney are the basis of a prosecution actually commenced, is a denial of due process and of the equal protection of the laws; and is violative of the right to have compulsory process for obtaining witnesses, which presupposes the right and opportunity to learn if a potential witness can testify to anything of value to the defense.

But such unlawful interference is not a denial of the right to confront and cross-examine, for such right pertains to the trial of the charge, and to the testimony there received, even though such testimony may have been given at an earlier hearing.

There are good and satisfying reasons why witnesses before a grand jury may be admonished not to disclose the questions asked them or their answers. One sufficient reason is that a charge may be under investigation as to a person against whom no indictment is returned. It may be to such person's advantage that the pendency of such investigation be not made public. If the investigation should result in an indictment, it may be to the public advantage that the person indicted have no advance warning. (*Goodman* v. *United States,* 108 F.2d 516 [127 A.L.R. 265].)

The latter reason disappears with the return of the indictment and the arrest of the defendant, when in California there emerges the certainty that the defendant will have available to him the questions asked and the answers given before the grand jury.

What right does the defendant then have with respect to those witnesses? He may interview them if they are willing to be interviewed, because even though no injunctions to silence may have been given, the person who was a witness before the grand jury cannot be compelled to give a statement, except a testimonial statement in response to a subpoena. But there is no right to take the deposition of such a witness under subpoena issued for that purpose as an investigatory procedure. (*Clark* v. *Superior Court, supra,* 190 Cal.App.2d 739.)

Defendant did not ask the court to do either of these things: To have any or all of the witnesses appear before the court to be told that the foreman's admonition might be disregarded; to have the foreman instructed by the court that the witnesses should be informed by the foreman that the admoni-

tion was no longer binding, which was the course suggested in *Walker* v. *Superior Court, supra,* 155 Cal.App.2d 134, 140. Nor did he seek to interview any of the witnesses who testified before the grand jury. Nevertheless, he asserts that the court was without power to try him "so long as the court permitted the admonition given by its officer, the foreman of the grand jury, to remain in effect."

At the time he presented his arguments on this point before the trial judge, defense counsel had the reporter's transcript of the questions and answers. He stated to the court that the admonition would: ". . . preclude us from any effective examination of those witnesses in determination of what their testimony had been or might be, discussion with them of their questions and answers and why they gave them. In short, it would prevent us from making an adequate preparation for trial." From counsel's statement, it seems that what he objects to is not the denial of a right to interview potential witnesses to be called on behalf of defendant, but the denial of a claimed right to cross-examine, prior to trial, witnesses adverse to the defendant on their testimony before the grand jury or on statements made to the police or the prosecutor.

We question that a defendant has such legally recognized right. It is not the right of cross-examination in advance of trial that is guaranteed by the California or the federal Constitution. The defendant who has the opportunity for such cross-examination may thank his good fortune rather than any constitutional guarantees.

It may be suggested that the cause of defendant's ambivalence with regard to the right of cross-examination is the dual system which obtains in California, under which a felony prosecution may be initiated either by indictment based on testimony given before a grand jury, where there is no opportunity of cross-examination, or by complaint filed in the municipal court, at the hearing of which there is a right of cross-examination. If a defendant's right to a private cross-examination of a grand jury witness be recognized, a next logical step might be a renewal of the claim that all felony prosecutions under the law of the states must be instituted by grand jury indictment.

It has so far been unsuccessfully urged that the Fourteenth Amendment to the federal Constitution imposes on the states the requirement of the Fifth Amendment that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." (*Hurtado* v. *California,* 110 U.S. 516 [4 S.Ct. 111, 28

L.Ed. 232] decided in 1884 (see also dissenting opinion of Justice Harlan, 110 U.S. 539 [4 S.Ct. 292, 28 L.Ed. 239].) The effort was again made as recently as 1964 when *Blakesley* v. *Crouse*, 332 F.2d 849, was decided.

The federal courts have not supported defendant's contention that secrecy may not be imposed on a grand jury witness. The United States Court of Appeals, Ninth Circuit, has held that without statutory authority an oath of secrecy might be imposed upon a witness. (*Goodman* v. *United States, supra,* 108 F.2d 516 [127 A.L.R. 265].)

The effect of an oath of secrecy is said to be that such witnesses are not prevented thereby, if they so desire, from giving to anyone any information they may have relevant to the matter in connection with which they were subpoenaed, even though it is the same information they testified to before the grand jury, but that the oath does preclude them from disclosing what testimony they or others gave or, in other words, from revealing what took place in the grand jury room. (127 A.L.R. 276; see also *State* v. *Kemp*, 124 Conn. 639 [1 A.2d 761] and 8 Wigmore, Evidence (3rd ed.) § 2362, pp. 736-737.)[1]

Defendant's contention is without merit.

Defendant contends next that the procedure adopted by the Superior Court of San Diego County for compensating counsel assigned to defend indigents denied him equal protection of the laws and violated his rights under Penal Code, section 987a, because it does not permit reasonable compensation of counsel, deprives the trial court of discretion in fixing compensation, and thus discriminates against those charged with crime in San Diego County.

It appears that the judges of the Superior Court of San Diego County had agreed among themselves that attorney's fees might be allowed in certain amounts to counsel appointed to represent indigent defendants. The defendant here contrasts the annual cost per case in San Diego County of cases where defendants are represented by appointed counsel with such cases in five other counties of the state. The counties listed are said to be a selected sample made by the Assembly Interim Committee on Criminal Procedure. The average cost per case in each of those other selected counties was higher than in San Diego County. Since section 987a,

---

[1] "There remain, therefore, on principle, no cases at all in which, *after* the *grand jury's functions are ended*, the privilege of the witnesses not to have their testimony disclosed should be deemed to continue.

"This is, in effect, the law as generally accepted today." (8 Wigmore, Evidence (3rd ed.) § 2362, p. 737.)

Penal Code, provides that appointed counsel "shall receive a reasonable sum for compensation . . . the amount of which shall be determined by the court," defendant argues that the adoption of a fee schedule amounts to a refusal by the court to exercise its discretion to determine a reasonable amount for compensation in a particular case; that the fact that on the average the cost per case is less in San Diego County than in some other counties in effect deprives indigents tried in the San Diego courts of the equal protection of the laws, since the inevitable result must be the appointment in San Diego County of counsel of ability inferior to that of appointed counsel elsewhere.

The question whether the defendant here was adequately represented should not be determined by a deductive process based upon a premise that the amount of the fee paid to a lawyer determines his ability. Nor are we called upon to justify the propriety of the fee schedule approved by the members of the superior court bench in San Diego County. That might, perhaps, be done by employing an inverse process of reasoning from the fact that counsel appointed for the defendant in the case at bench is generally recognized to be well qualified by reason of experience, industry, resourcefulness and fidelity to the cause of his clients. The trial judge expressed his satisfaction that the defendant had adequate and capable representation. The record on appeal, the appellant's brief, and the experience of this court with defense counsel supports the same conclusion.

Having made that pragmatic determination, we need not consider whether in fact the fee schedule in question is inflexibly adhered to by every judge in San Diego County. One of the superior court judges before whom defense counsel argued this point considered the fee schedule to have been arrived at by agreement with the Bar Association. If the adoption of such a schedule wrongfully acts to deprive section 987a, Penal Code, of its intended application, counsel is not, as he argues he must be, estopped to take appropriate action to have the trial court give effect to the provisions of Penal Code, section 987a. That properly could be done only after the services had been performed in the trial court, as was attempted in *Hill* v. *Superior Court,* 46 Cal.2d 169 [293 P.2d 10], cited by defendant.

Defendant's third contention is that the search of his trailer violated his rights under the Fourth Amendment because the search was conducted without a warrant and de-

fendant did not understandingly waive his right to be secure against such a search.

The objects seized in the search and received in evidence over defendant's objection were the woman's garments, the contraceptive device and the photograph of the 10-year-old girl who had testified as to the presence of those things in defendant's trailer.

 Whether in a particular case, an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all of the circumstances. (*People* v. *Michael*, 45 Cal.2d 751. 753 [290 P.2d 852].)

 The officer who obtained defendant's consent to the search denied that he had told defendant that the search would be made without consent if consent should be withheld; defendant testified that such statement had been made. The conflict was determined by the trier of fact with knowledge of all of the circumstances, including the fact that defendant was in jail at the time. Since it cannot be said as a matter of law that the consent was given in submission to an express or implied assertion of authority, the determination that there was consent should stand. (*People* v. *Burke*, 47 Cal.2d 45, 49 [301 P.2d 241].)

 Plaintiff urges that the officer could have obtained a search warrant and that such fact might affect the validity of the consent given, citing *People* v. *Ruhman*, 224 Cal.App. 2d 284 [36 Cal.Rptr. 493]. On the basis of information given by the girl who had testified about the objects seized in the search, a warrant might perhaps have been obtained to search for those objects. But the fact that a search warrant might have been obtained would be a circumstance for the trier of fact to consider in determining the truth of the officer's testimony rather than a circumstance that would supply the lack of actual consent. We find no error in the court's ruling on that point.

 Finally, defendant asserts that the trial court was without jurisdiction to pronounce sentence as to the first count of the indictment because the case had previously been dismissed as to that count.

The "Partial Order of Release" was made on the date of the return of the various verdicts. The language of the order is: "It is ordered that said Defendant be forthwith released from the custody of the sheriff. Case dismissed as to count one only, as contained in the indictment."

There was no reason to dismiss count one, as to which defendant had been found guilty. It was unnecessary to dismiss count four because the defendant had been found not guilty on that count.

Whether we may take judicial notice that such an order is made for the purpose of supplying the sheriff with information as to a prisoner in his custody, it is apparent that the order made on May 20 is directed to serve such purpose. It was not made in response to any motion that appears in the record. At the time judgment was pronounced, defense counsel stated that no count was dismissed; that the jury acquitted on one count. The district attorney seemed to hold the same opinion. When defendant was arraigned for judgment, it was as to all the counts of which he had been found guilty. No legal cause was presented why judgment on all of those counts should not have been pronounced. It seems obvious that the mention of count one in the May 20 order was indeed a clerical error; and that existence of the order was unknown to the parties until after the record on appeal had been prepared.[2]

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied October 18, 1965, and appellant's petition for a hearing by the Supreme Court was denied November 24, 1965.

---

[2]At the time of oral argument defense counsel stated that such was the fact.