Arthur Marion, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

**UNITED STATES of America ex rel. Thomas GRIFFIN**

v.

**Edward J. HENDRICK, Superintendent of County Prisons.**

No. M-2494.

United States District Court
E. D. Pennsylvania.

May 23, 1963.

LUONGO, District Judge.

After a trial held in the Court of Quarter Sessions of Philadelphia County from May 24, 1957 to June 5, 1957, Thomas Griffin was convicted on 31 bills of indictment charging unlawful possession and sale of drugs. At the trial, over Griffin's objection, tape recordings of telephone conversations intercepted by means of wire tap were played before the jury. Griffin was sentenced to consecutive terms of imprisonment of 2½ to 5 years each on six of the bills of indictment (a total of 15 to 30 years) and sentence was suspended on the remaining 25 convictions. On appeal, the Pennsylvania Superior Court held [Commonwealth v. Griffin, 189 Pa.Super. 59, 149 A.2d 656 (1959)] that the use of evidence obtained by wire tap was not prohibited by Pennsylvania law at the time Griffin was tried, and that a statute enacted after his conviction, but before his sentencing (Act of July 16, 1957, P.L. 956, No. 411 § 1, 15 P.S. § 2443) which prohibited wire tapping and the use of evidence so obtained, was prospec-

tive only and had no effect on his trial. The Pennsylvania Supreme Court refused allocatur and the United States Supreme Court denied certiorari, 365 U.S. 838, 81 S.Ct. 750, 5 L.Ed.2d 747 (March 6, 1961).[1] Griffin has exhausted state remedies on the issue he presents to this court.

In this petition for writ of habeas corpus, relator alleges that his constitutional rights were violated by the use of the wire tap evidence at his trial. Respondent has admitted the use of such evidence. I have assumed that if the evidence was obtained by means which violated relator's constitutional rights, its use was prejudicial and vitiated the judgments of conviction, regardless of how much other evidence there was as to relator's guilt. cf. Lynumn v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963). The matter was therefore presented and argued as a matter of law, and no testimony was taken.

Relator's argument is that since his trial and the disposition of his appeals, Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), which permitted evidence obtained in violation of the Fourth Amendment to the Constitution of the United States to be used in state courts, has been overruled by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and evidence so obtained is now inadmissible in proceedings in state courts. The admission of such evidence in his case, he contends, is contrary to the ruling of Mapp and requires that his conviction be set aside.

It is not necessary to consider the controversial question whether Mapp is retrospective since its holding is not applicable in this case. Mapp does not create new standards of constitutionally impermissible searches and seizures, it merely extends to the state courts the same prohibition of the use of evidence so obtained that had theretofore been limited to the federal courts. Mapp does not come into play unless and until there has been shown to be an unreasonable search and seizure. The United States Supreme Court has declared that wire tapping is *not* a search and seizure prohibited by the Fourth Amendment and evidence obtained by such means by federal agents was held properly admitted in a prosecution in a federal court. Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). If Olmstead is still good law, relator's reliance on Mapp is misplaced.

Olmstead was decided by a five to four vote with Justices Holmes, Brandeis, Butler and Stone in the minority. While the majority view appears to be somewhat out of step with the liberal trend of the recent Supreme Court decisions dealing with civil rights, nevertheless it has not been overruled although the Court has been asked on several occasions to do so.[2] Indeed, in Mapp, the case relied on so heavily by relator, Mr. Justice Clark, writing the opinion of the Court, cited Olmstead twice. It is highly unlikely that he would have done so had there been any question about the continued validity of Olmstead's teaching, particularly in a case in which the issue of constitutionally prohibited search and seizure was paramount. I can only conclude that Olmstead still

---

1. Chief Justice Warren and Justices Douglas and Brennan were of the opinion that certiorari should be granted.

2. Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942). Testimony concerning conversations in a hotel room overheard by means of a detectaphone placed on outer wall of defendant's room held admissible and the use of the device not violative of the Fourth Amendment.
   On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952). Undercover agent with radio transmitter concealed on his person entered defendant's premises and engaged him in incriminating conversation. Federal agent stationed with radio receiver away from defendant's premises listened in and testified concerning the conversation. *Held* not a violation of the Fourth Amendment. The Supreme Court refused to consider the specific request to overrule Olmstead on the ground it would afford no aid to defendant since his situation was not one involving wire tapping.

represents the view of the United States Supreme Court, that wire tapping is not a problem of constitutional dimensions.

Both the inclination and the opportunity to overrule Olmstead were undoubtedly diminished when Congress, in 1934, enacted the Federal Communications Act, 47 U.S.C. § 151 et seq., section 605 of which prohibits the interception and divulgence of the contents of (inter alia) telephone conversations. That Act has been interpreted to render inadmissible in *federal* courts wire tap evidence, whether obtained by federal agents [Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937)], or by state agents [Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126 (1957)], even if the communications are intrastate [Weiss v. United States, 308 U.S. 321 (1939)]. In at least one case since the adoption of the Federal Communications Act the Supreme Court specifically did not reach the constitutional issue since the case could be determined under the Act. Benanti v. United States, supra.

■ The rule of exclusion of evidence obtained in violation of section 605 of the Federal Communications Act is applicable only to the federal courts, it does not apply to and does not prohibit the use of such evidence in state court proceedings. Schwartz v. Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231 (1952). Of Schwartz it was said: "The rationale * * * is that despite the plain prohibition of Section 605, due regard to federal-state relations precluded the conclusion that Congress intended to thwart a state rule of evidence * * *." Benanti v. United States, supra.

■ After relator's trial the Commonwealth of Pennsylvania legislatively changed the rule of evidence applicable in its courts to conform to the rule judicially imposed upon the federal courts through interpretation of the Federal Communications Act. In that respect relator is in no different position than was Olmstead when wire tap evidence was used against him in the federal prosecution. In Olmstead's case the use of the evidence so obtained was held not to violate his constitutional rights. Thereafter such conduct was legislatively prohibited and evidence thus obtained judicially declared inadmissible. In Griffin's case the use of such evidence was lawful (under Pennsylvania law) at the time of his trial. Its use violated none of his constitutional rights. He cannot complain because the legislature of Pennsylvania has since prohibited such conduct and since declared inadmissible such evidence. He was tried in accordance with the law as it then existed. He was entitled to no more. United States v. Sobell, 314 F.2d 314 (1963).

The petition will be denied.

The court acknowledges, with grateful appreciation, the services of Stanley Dolnick, Esquire, who, as a volunteer member of the Federal Defense Panel, pursuant to court appointment, contributed generously of his time and effort in advancing relator's cause.