[Crim. No. 8692.    Second Dist., Div. Two.    July 6, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. FRANCIS
DI BLASI, Defendant and Appellant.

Louise D. Dale, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David M. Rothman, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, J.—Appellant was indicted and convicted of three counts: count I, possession of marijuana in violation of Health and Safety Code, section 11530; count II, possession of heroin in violation of section 11500, and count III possession of a dangerous weapon while being addicted to the use of narcotics, in violation of Penal Code, section 12021. The sentence on each count was to run concurrently. Two priors were also charged but admitted.

On February 15, 1962, four deputy sheriffs assigned to the vice detail knocked on the door of an apartment in North Hollywood leased by one George Acevedo ostensibly to inter-

view Patricia Ricketts, a person known to at least one of them to be a narcotics user who was occupying the apartment at the time. Deputy Phillips testified he knocked on the door and when Miss Ricketts answered, he stated that it was Ray Phillips and that he wanted to see Pat. Receiving no reply to this statement, he moved to the window of the apartment and looked inside. He observed Miss Ricketts walking away from the door and thought he heard a commode being flushed.

Deputy Lesnick, one of the four who was known to Miss Ricketts by name, then said: ''Sheriff's Vice Detail''— . . . ''Pat. This is Joe Lesnick. Open the door.'' Lesnick told her they wanted to talk to her and she then according to Lesnick opened the door and said ''Well, come on in.'' Whereupon all four deputies entered the apartment. Miss Ricketts however testified that Deputy Lesnick identified himself and then said: ''Okay, Pat, open up the door or we're going to break it down.''

Phillips, who by stipulation qualified as an expert on narcotics, testified that on entering the apartment the bathroom door was open to his left and he could see the appellant inside, nude from the waist up, in a kneeling or stooped position over the commode, and with his right hand inside the bowl and his left hand flushing the commode. No explanation was offered by Deputy Lesnick or any of the other deputies—why they had to enter the apartment if their sole purpose was to talk to Patricia Ricketts. There is no testimony that any of the deputies knew appellant was in the apartment or that they knew appellant or anything about him.

Phillips testified further, ''On going over to Mr. Di Blasi, I could observe a portion of a teaspoon, metal teaspoon, to be in the bowl of the commode.

''Also I could observe Mr. Di Blasi's arms to bear what appeared to be puncture wounds similar to the wounds caused by injection of narcotics.

''. . . . . . . . . . . . .

''I then advised Mr. Di Blasi that he was under arrest for violation of State narcotics laws. . . .''

A search of the premises by the other deputies uncovered a rubber balloon, ceramic plate and double-edged razor, items usually used by narcotic addicts to either carry or prepare narcotics. At the time the officers believed that these items bore evidence of narcotic use. Later chemical analysis of each item proved negative. A further search of the apartment uncovered a small box of marijuana.

After his arrest appellant gave the deputies permission to

search his own living quarters. This search uncovered the gun upon which count III is based.

Appellant contends that his arrest was illegal and that the deputies had no reasonable cause to intrude upon his privacy in the bathroom and that the contraband evidence upon which his convictions on counts I and II were based, was the product of an illegal search and seizure.

In the absence of a search warrant the burden of proof is upon respondent to justify a search and seizure by the showing of reasonable cause to make an arrest. (*People* v. *Haven*, 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927]; *Badillo* v. *Superior Court*, 46 Cal.2d 269 [294 P.2d 23].)

It is well established however that the police have the right to seek interviews with a suspect or a witness wherever he may be found (*People* v. *Sanchez*, 189 Cal.App.2d 720, 724 [11 Cal.Rptr. 407]; *People* v. *Michael*, 45 Cal.2d 751, 754 [290 P.2d 852]); and once having received permission to enter a dwelling are not required to close their eyes to what they see or hear. (*People* v. *Michael, supra,* at pp. 753-754; *People* v. *Haven, supra.*)

However, ''The right to seek interviews with suspects at their homes [citations] *does not include the right to demand that a suspect open his door.* [Italics added.] A suspect has no duty to cooperate with officers in securing evidence against him and, in the absence of probable cause to make an arrest, he is entitled to have a magistrate determine whether there is justification for invading the privacy of his home. [Citations.] Thus, in approving the officers' conduct in seeking interviews in the *Michael* case and in the *Martin* case, we were careful to point out that we were not dealing with inquiries 'accompanied with any assertion of a right to enter or search or secure answers' [citations] or made with a demand 'that the door be opened or that [the officers] be admitted.' [Citations.]

''We are not here concerned with the rule that 'circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. [Citations.] What we are concerned with is the right of all persons to be free from unreasonable invasions of the privacy of their homes. The right to seek interviews does not justify an officer's intruding himself into a home without consent, either physically [citation] or by a view of the interior made possible only by a wrongful assertion of authority. [Citation.] 'There are many reasons

other than guilt of a felony why an occupant of an apartment may not wish himself or others present exposed to the immediate view of a stranger, even if the stranger is a police officer.' [Citation.]'' (*People* v. *Shelton,* 60 Cal.2d 740, 746-747 [36 Cal.Rptr. 433, 388 P.2d 665].)

The search, of course, cannot be justified by what it turned up. (*People* v. *Zabala,* 217 Cal.App.2d 550, 555 [31 Cal.Rptr. 712]; *People* v. *Privett,* 55 Cal.2d 698, 701 [12 Cal.Rptr. 874, 361 P.2d 602].)

The record shows that Deputy Lesnick knew that Ricketts was a user. There is nothing in the record to show that any kind of crime had been committed in the vicinity of the apartment or that anyone had reported a crime or even a disturbance or a nuisance or that any one of the four deputies had reason for suspecting that a crime of any kind had been committed or was being committed, or that any one of them did in fact, for reason or lack of it, suspect that a crime had been or was being committed.

In the circumstances of this case, the four deputies, demanding entry to an apartment occupied by one who was doing nothing illegal and who was not acting suspiciously (there is no evidence of either) was completely inexcusable on any theory.

Since we are of the opinion that the initial entry was unlawful, it is clear that any search and seizure made pursuant to consent secured immediately following such intrusion is inextricably bound up with the illegal conduct and cannot be segregated therefrom. (*People* v. *Haven, supra,* 59 Cal.2d 713, 719.)

The convictions, and all of them, must be reversed for additional reasons.

George Acevedo, heretofore referred to as the lessee of the apartment, testified that the narcotics and the paraphernalia that had been found therein belonged to him, that he had brought them to the apartment earlier on the day of the arrest and before appellant arrived at the apartment.

The record shows that Acevedo had been advised of his constitutional rights by appellant's counsel and specifically told that if he took the witness stand and testified to the facts above detailed, that he would be incriminating himself. Acevedo, however, persisted in his desire to testify.[1]

---

[1]After advising Acevedo outside the presence of the jury, in two full pages of reporter's transcript, of his right not to testify and advising him to take the Fifth Amendment, the court said:

''THE COURT: If you take the stand and tell this jury and this

On cross-examination of Acevedo, respondent impeached him by showing that he had been convicted of a felony and brought out the fact that within the past few days he had talked to appellant. When appellant attempted on redirect to rehabilitate his witness by showing that he had nothing to gain but had in fact, with specific and immediate knowledge of what would happen to him, insisted on taking the witness stand, the court, on objection of respondent, excluded the evidence on the ground that it was improper redirect. Nothing in section 2050 of the Code of Civil Procedure, which is the only authority cited by respondent in support of its position, justifies this ruling. The witness in spite of what amounted to a judicial attempt to prevent his testifying, took the stand and testified. Respondent attacked his testimony as fabrication. ▮ The law is clear that either party has the right to try and rehabilitate a witness on redirect and that even hearsay testimony may be admitted for this limited purpose. (*People* v. *Amanacus*, 50 Cal. 233; *People* v. *Walsh*, 47 Cal.2d 36, 41 [301 P.2d 247]; *People* v. *Rosoto*, 58 Cal.2d 304, 340 [23 Cal.Rptr. 779, 373 P.2d 867].)

Penal Code, section 12021 upon which count III is based, prohibits the possession of a firearm by anyone "addicted to the use" of any narcotic drug. Welfare and Institutions Code, section 5350, defines a narcotic addict as "any person who habitually takes or otherwise uses to the extent of having lost the power of self-control any opium, morphine, cocaine, or other narcotic drug...."

---

court after what I have advised you and I advise you not to testify to anything that incriminates you with a felony, if you take the stand and testify to things that incriminate you, I am going to ask the District Attorney to file felony complaints against you for felony prosecution, I have that right, the code provides it right there in the first part of this code (indicating), it says that 'the magistrate must,' the magistrate is the judge of the Superior Court as well as the Municipal Court.

"The Supreme Court judges are magistrates, too.

"Is that clear to you?

"THE WITNESS: Yes.

"THE COURT: Now, I will give you another step.

". . . . . . . . . . . . .

"THE COURT: After what I have said or advised you, told to you, do you desire to testify with respect to what may or may not incriminate you with felony prosecution or the commission of a crime or not?

"THE WITNESS: I wish to testify.

"THE COURT: You want to testify?

"THE WITNESS: Yes.

"THE COURT: All right. You may proceed."

■ Appellant contends that the evidence was insufficient to support his conviction under count III; because the only evidence of addiction was given by Deputy Phillips, who by stipulation qualified as a narcotic expert. Appellant's position is that this evidence is insufficient and that medical evidence is or should be required. He points out that there was no medical evidence before the trial court. Appellant calls attention to the definition of a narcotic addict found in Welfare and Institutions Code, section 5350, and the fact that the sections following 5350 of said code require expert medical evidence to confine a narcotic addict in a state institution for rehabilitation.

*People* v. *Kimbley*, 189 Cal.App.2d 300, 306 [11 Cal.Rptr. 519], appears to be squarely in point and settles this contention against appellant.

We are convinced, however, that the arrest of appellant in the circumstances described as well as the search and seizure which preceded it, and that which followed, were and each of them was illegal and unwarranted. Any admissions obtained from appellant after such illegal arrest are tainted with illegality. In a situation affording officers what appears to be substantial excuse, much more persuasive than in the case at bench, the Supreme Court said in *Shelton, supra,* at page 745:

"The search cannot be justified on the ground that the officers had reasonable cause to arrest Victorian before they demanded that she open the door. Although the informer Baul apparently knew that Victorian was at the apartment, she did not tell the officers that Victorian was also a user or was involved with Shelton in the narcotics traffic. Thus, even if the officers had reasonable cause to believe that Shelton had narcotics at the apartment, they had no reasonable cause to believe that his possession, if any, was shared with Victorian. Before they demanded that the door be opened, they knew only that a woman was in an apartment where Shelton may have stored narcotics. Such association between a suspect and even a known criminal by itself is not reasonable cause for an arrest and search. [Citations.] "

The court went on to say at page 748:

" ' "The right of officers to thrust themselves into a home is ... a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by

a judicial officer, not by a policeman or government enforcement agent.'' ' [Citations.]''

The judgment as to Francis Di Blasi is reversed.

Fox, P. J., and Herndon, J., concurred.