[Crim. No. 5006. First Dist., Div. One. Jan. 28, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. NATOLIO A. LA PELUSO, Defendant and Appellant.

Benjamin M. Davis and Paul Briefer for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and John F. Kraetzer, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Defendant appeals from a judgment sentencing him to state prison following his conviction by verdict of a jury of the offense of unlawful transportation of narcotics in

violation of section 11501 of the Health and Safety Code. Defendant and another were originally jointly charged by indictment with (1) conspiracy to violate section 11501 of the Health and Safety Code in violation of section 182 of the Penal Code, (2) violation of section 11501 as noted above, (3) possession of heroin in violation of section 11500, and (4) possession of marijuana in violation of section 11530 of the same code. Defendant was separately tried and the jury found him guilty of the first three charges and acquitted him of the fourth. The trial court granted the defendant's motion for a new trial as to counts one and three, denied the motion as to count two, and denied defendant probation and sentenced him to prison on that charge. This appeal ensued.

The questions involved are as follows: (1) Were tape recordings of telephone conversations erroneously admitted in evidence in violation of defendant's constitutional rights, or state or federal law? (2) Did the trial court commit prejudicial error by admitting in evidence statements made by defendant's codefendant to the police after his arrest? (3) Was the search of the hotel room occupied by defendant illegal, and if so, were the items found therein improperly admitted in evidence? (4) Was defendant's arrest illegal, and if so, were the items found at the time and place thereof improperly admitted in evidence? (5) Is the evidence insufficient to support the conviction of the charge of transportation for which defendant was sentenced? It is herein concluded that an analysis of the record and the law applicable thereto exacts a negative response to each question and prescribes an affirmance of the judgment.

## The Facts

An inspector of the San Francisco Police Department attached to the narcotic detail testified that during the period from January to March 1964, arrangements were made to have a special employee make monitored and recorded telephone calls from the headquarters of the narcotic detail in the Hall of Justice to a number listed for the Atherton Hotel and the extension for room 710 at those premises. A transistorized device was attached adjacent to the telephone used by the special employee, and transmitted the conversation by induction to a tape recorder. Four officers generally were present and the calls were monitored by use of extension telephones. The special employee was aware that the conversations were being recorded and monitored and gave his con-

sent. No advice was given to the parties on the other end of the line that the conversations were being monitored or recorded.

The special employee was addicted to narcotics and was under arrest. He was furnished money by the authorities and charges against him were later dismissed. He had been used as an informer by the authorities since 1960 and had been instrumental in furnishing information on which at least three prior convictions of violations of the narcotic laws had been secured.

The inspector did not know of his own knowledge who occupied the room in question at the time of the telephone conversations, but he recognized the defendant's voice from former acquaintance with him, and found that the codefendant was the person who appeared in response to and in accordance with the arrangements made in the last telephone conversation held. On *voir dire* examination, out of the presence of the jury, defendant admitted that the room was registered to him and that he had lived there during the period in question. In the same proceedings, his codefendant testified he was also registered at the hotel, although under an assumed name, and that he was living with defendant.

The recordings were admitted into evidence, and are before this court as transcribed in the typewritten record. The first call was made January 31, 1964. Four calls were uncompleted. Apparently six calls, the last of which was before February 16, 1964, were completed to defendant, and four calls were completed to his codefendant, culminating in that of March 3, 1964, which led to the latter's arrest. These conversations, despite guarded language, indicate that the defendant was familiar with his codefendant's activities; that he communicated the requests of the special employee to his codefendant; that the codefendant was attempting to secure what the special employee desired; and that in one conversation between February 6th and 16th, the defendant himself offered to get something for his caller if the codefendant was unsuccessful.

The inspector amplified the partially inaudible record of the last conversation which reflected that defendant's roommate would meet the special employee and furnish him five "spoons" of heroin for $60 a spoon.

The officers went to the vicinity of the hotel. The informer gave them a description of the codefendant and identified the car he used. The suspect came out of the hotel, entered the

described vehicle, drove off and was intercepted by the officers approximately a block away. The inspector saw the driver move across to the passenger's side of the car and put his right hand in his coat pocket. The officer then opened the car door, restrained the codefendant, removed his hand from his coat pocket, and extracted what proved to be heroin wrapped in contraceptives and tissue.

Over defendant's objection the inspector was permitted to testify to a conversation with the codefendant at the scene of his apprehension. Admittedly he was not advised of his right to remain silent, or his right to counsel, or of the fact that anything he said might be used against him or anyone else. According to the inspector, the codefendant was told he was under arrest, and in response to the inspector's questions indicated that he had no more contraband secreted on his body, but did have more contraband in his room in a night stand between two beds. The inspector related that he started to break down and was crying; that he had no objection to going back and stated he wanted to get the matter cleaned up; that he gave another inspector the key to his room, but said that he did not think the door was locked; and that he told the officers that defendant was in the room, unarmed, and watching television.

It was ascertained that the car driven by the codefendant was registered to defendant. The officers proceeded to room 710 with the codefendant who, according to the inspector, gave them the key and consented to the entry of the room. Two officers went in the unlocked door without using the key, and left the codefendant in the hall with a third officer.

On *voir dire,* out of the presence of the jury, it was developed that the officers had no warrant or search warrant; that the codefendant was handcuffed upon his apprehension and when he allegedly gave them the key; that he was left about 30 feet down the hall when entry was effected; and that the officers did not knock before entering the room. The codefendant, who had already plead guilty to transportation of heroin, confirmed that he had the conversation with the informer and started out in defendant's car to deliver the contraband; that he was apprehended, handcuffed and taken back to the seventh floor of the hotel by the officers; that he stood down the hall with one officer, while the others pushed the door open without knocking; and that he was not taken into the room until three or five minutes later after the officers had commenced searching. He denied that he owned

or possessed a key to the room, or that he gave a key to one of the officers; and stated that the officers requested, without success, a key from the night clerk at the reception desk. He admitted he was upset, but denied he was crying, and testified that the officers never advised him of any legal rights, and did not request his permission, but told him to go back to the hotel and to his room. He admitted that he told the officers there was more contraband in the night stand in his room, and recited that he told them that defendant was there asleep, not that he was watching television as reported by the inspector.

The defendant also testified, out of the presence of the jury, on the issue of the propriety of the entry into room 710. He stated that he was alone in the room asleep with the door closed when he was awakened by a loud bang on the door and three officers jumped in on him; that the inspector, whom he knew, confronted him with a pistol and grabbed and handcuffed him; that he never heard anybody ask for, nor did he give anyone permission to enter the room; and that no one asked him for permission to search the room. He asked "What's going on?" upon awakening and finding the officers in the room but made no other objection to the entry because he had no choice; and made no objection to the officers' search of the room because he had no choice after looking at the inspector's pistol and being handcuffed.

The court overruled defendant's motion to suppress all evidence which was the product of the entry and search of the room. The inspector testified that he found contraband, which proved to be heroin, in the drawer of the night stand; that in the same drawer were prescription vials and papers, which indicated on their face that they belonged to defendant, and a shoe shine kit; that defendant admitted that everything in the drawer was his with the exception of the kit and the contraband; and that his codefendant admitted ownership of the last-mentioned articles and the heroin which had been found on his person. The inspector observed another officer find a plastic box which proved to contain marijuana and some heroin, in a dresser drawer. This box bore the fingerprints of the codefendant, but not those of defendant. A search of the room in its entirety and the personal effects of the two occupants yielded nothing else of significance other than $180 in the pillow case of defendant's bed.

The defendant rested without presenting any testimony on his behalf.[1]

## 1. *The Tape Recordings*

■ Defendant contends that the recordings of the telephone conversations were inadmissible in evidence because they were secured in violation of section 605 of the Federal Communications Act (47 U.S.C.A. § 605),[2] in violation of sections 640 and 653j of the Penal Code of this state, and in violation of his rights under the Fourth and Fifth Amendments of the Constitution of the United States. The application of the foregoing statutes and the Fourth Amendment to the recording of conversations between an accused and an informer cooperating with the police was recently reviewed by this court in *People* v. *Fontaine* (1965) 237 Cal.App.2d 320, 329-332 [46 Cal.Rptr. 855], wherein the applicable statutory provisions are set forth at length, and the cases construing them are reviewed. The conclusion found therein that neither the statutes nor the Constitution encompass eavesdropping or recording at the point of reception with the consent of the intended recipient is controlling in this case.

Defendant seeks to avoid the effect of the foregoing because, he asserts, the informer's consent, while under arrest, and with a promise of leniency was not genuine. In *Weiss* v. *United States* (1939) 308 U.S. 321 [60 S.Ct. 269, 84 L.Ed. 298], the court concluded: "We hold that § 605 rendered the communications [recordings and transcripts thereof taken without authorization or consent, but subsequently used by those who plead guilty and turned state's evidence] inadmissible, and that it was prejudicial error for the trial court to admit them either by permitting the defendants who turned state's evidence to read the transcripts or allowing the prosecutor to put the transcripts and phonographic records into

---

[1] With remarkable prescience the court on October 16, 1964, without the benefit of *People* v. *Modesto* (decided Feb. 11, 1965) 62 Cal.2d 436 [42 Cal.Rptr. 417, 398 P.2d 753], followed *Malloy* v. *Hogan* (decided June 15, 1964) 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653], refused to permit the prosecutor to comment on the defendant's failure to testify, instructed the jury that no presumption or inference could be drawn therefrom, and thereby avoided the pitfall provided by *Griffin* v. *California* (decided Apr. 28, 1965) 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed. 2d 106].

[2] It is assumed, as it was in *People* v. *Malotte* (1956) 46 Cal.2d 59, 63-64 [292 P.2d 517], that the provisions of the Federal Communications Act are applicable in state criminal proceedings, but compare: *Schwartz* v. *Texas* (1952) 344 U.S. 199, 203 [73 S.Ct. 232, 97 L.Ed 231] and *United States* ex rel. *Griffin* v. *Hendrick* (D.C.E.D. Pa. 1963) 217 F. Supp. 865, 867.

evidence upon identification by the parties to the conversations." (308 U.S. at p. 331.) In *United States* v. *Laughlin* (1963) 222 F.Supp. 264, the court on the basis of *Weiss* granted a motion to suppress the evidence of a telephone conversation where the informant who placed the call testified that she only acquiesced in so doing because of a threat of prosecution for perjury in the very matter under investigation and a promise of leniency. (See same case (1965) 344 F.2d 187, 191, fn. 18.) The effect of coercion upon an informant was raised, considered and rejected as impairing his consent in *People* v. *Bates* (1958) 163 Cal.App.2d 847 [330 P.2d 102], in which case, as herein, the informant was not a witness. The court noted: "There is no evidence that she was threatened, placed under arrest, or promised leniency." (163 Cal.App.2d at p. 853.) This is not to say that such factors would necessarily vitiate consent as a matter of law. A distinction must be drawn between motivation, which may be induced by proper representations, and consent which may then either be freely granted or grudgingly conferred. Where consent is freely granted, the fact that the special employee is under arrest for a narcotic violation and cooperates following assurances that the fact of cooperation will be made known to the United States Attorney's office, will not negative that consent. (*Black* v. *United States* (9th Cir. 1965) 341 F.2d 583.) The same circumstances here do not compel a finding contrary to the inspector's testimony that the special informant voluntarily consented to the procedure followed.

■　　Defendant further points out that the law condemns invasions of privacy. (See *Britt* v. *Superior Court* (1962) 58 Cal.2d 469, 472 [24 Cal.Rptr. 849, 374 P.2d 817]; *Bielicki* v. *Superior Court* (1962) 57 Cal.2d 602, 607 [21 Cal.Rptr. 552, 371 P.2d 288]; *Silverman* v. *United States* (1960) 365 U.S. 505, 508-512 [81 S.Ct. 679, 5 L.Ed.2d 734]; *Jones* v. *United States* (1959) 362 U.S. 257, 261 [80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233]; *Williams* v. *United States* (1959) 263 F.2d 487, 489; and *McGinnis* v. *United States* (1st Cir. 1955) 227 F.2d 598, 603.) He asserts that the procedure followed here, although concededly not a trespass, as in *Silverman*, was a reaching out into the privacy of his room to listen to what was said therein. This argument completely overlooks the fact, noted in many of the cases which are reviewed in *Fontaine*, that by projecting his voice over the wires defendant forsakes the shelter of the privacy of his abode, and submits his words to the risk of dissemination at the place where they

are received. (In addition to cases referred to in *Fontaine,* see *Todisco* v. *United States* (9th Cir. 1961) 298 F.2d 208, 209-210 (cert. den. (1962) 368 U.S. 989 [82 S.Ct. 602, 7 L.Ed.2d 527]); *Ferguson* v. *United States* (10th Cir. 1962) 307 F.2d 787, 788-789; *Carnes* v. *United States* (5th Cir. 1962) 295 F.2d 598, 599-603; *Douglas* v. *United States* (4th Cir. 1957) 250 F.2d 576-577; and *United States* v. *Barbour* (1958) 164 F.Supp. 893, 897.)

## 2. *Statements of the Codefendant*

██ Defendant contends that the court erred in admitting evidence of statements made by the codefendant at the time of his arrest, in which he admittedly told the officers that there was more contraband in the night stand in the room and that defendant was there, and allegedly gave up his key and consented to the entry and search of the room. He contends that the evidence was hearsay as to him; and that it was inadmissible because it was secured in violation of the principles set forth in *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

The People concede that this evidence of the codefendant's statements was hearsay and was improperly admitted before the jury in the trial on the merits. This concession appears to be well founded in law. (See *People* v. *Roberts* (1953) 40 Cal.2d 483, 489 [254 P.2d 501]; *Callan* v. *Superior Court* (1962) 204 Cal.App.2d 652, 664 [22 Cal. Rptr. 508]; *Wong Sun* v. *United States* (1962) 371 U.S. 471, 490-491 [83 S.Ct. 407, 9 L.Ed.2d 441]; and cf. *People* v. *One 1948 Chevrolet Conv. Coupe* (1955) 45 Cal.2d 613, 619-620 [290 P.2d 538, 55 A.L.R.2d 1272].) It is then asserted that there was no prejudice to the defendant by the admission of testimony regarding these statements before the jury. This contention appears sound on the merits of the charge of transportation, because other evidence, if properly admitted, conclusively established the prior use by defendant of the telephone through which, and his immediate presence in the room from which the transaction emanated; the existence of contraband in the room in a place where it could be inferred he had knowledge, if not dominion and control of it; and the use of his car in the attempt to affect the delivery. No attempt was made to controvert the facts that contraband was found in the night stand or that defendant was in the room. The statements attributed to the codefendant concerning his key and consent had no direct bearing on the question of the guilt of the defendant; and, in fact, it may be said that the

declarations taken as a whole tended to cast the sole responsibility on the codefendant and relieve the defendant of complicity.

As hearsay evidence the declarations were not properly, but, as seen, not prejudicially, before the jury. Nevertheless, unless otherwise inadmissible, they could be considered by the court alone on the issue of probable cause raised by the subsequent entry and search of the room and the arrest of the defendant therein. (*People* v. *Haven* (1963) 59 Cal.2d 713, 715, fn. 1 [31 Cal.Rptr. 47, 381 P.2d 927]; *People* v. *Gorg* (1955) 45 Cal.2d 776, 780-781 [291 P.2d 469]; *People* v. *Boyles* (1955) 45 Cal.2d 652, 656 [290 P.2d 535]; *Brinegar* v. *United States* (1948) 338 U.S. 160, 172-174 [69 S.Ct. 1302, 93 L.Ed. 1879].) Defendant appears to assert that since the statements were obtained in violation of *Dorado,* they cannot be used to support probable cause for further action without in effect countenancing the violation of the codefendant's constitutional rights. He contends that if the statements were obtained in violation of the rights of another, he may properly object to their use against him. (See *People* v. *Martin* (1955) 45 Cal.2d 755, 761 [290 P.2d 855].) The statements, however, are not the crux of the matter; the incriminating evidence is the evidence which evinced the truth of the matter stated, to wit, the heroin in the drawer with defendant's personal effects. Inquiry should therefore be directed to determine whether that evidence is "a fruit of the poisonous tree." (*Nardone* v. *United States* (1939) 308 U.S. 338, 341 [60 S.Ct. 266, 84 L.Ed. 307]; and see *Wong Sun* v. *United States, supra,* 371 U.S. 471, 487-488; *People* v. *Faris* (1965) 63 Cal.2d 541, 546 [47 Cal.Rptr. 370, 407 P.2d 282]; and *People* v. *Bilderbach* (1965) 62 Cal.2d 757, 763-768 [44 Cal. Rptr. 313, 401 P.2d 921].) If the codefendant was objecting to the admission of the evidence found in the room it would be necessary to equate statements leading to the discovery of evidence which are secured from a voluntary, but *Dorado* violative admission or confession, with such leads as obtained from illegal wiretapping (*Nardone* v. *United States, supra*), or from verbal or other evidence derived from an unlawful entry and unauthorized arrest. (*People* v. *Faris, supra*; *People* v. *Bilderbach, supra*; *Wong Sun* v. *United States, supra,* 371 U.S. at pp. 484-487; and *Silverthorne Lbr. Co.* v. *United States* (1919) 251 U.S. 385, 392 [40 S.Ct. 182, 64 L. Ed. 319, 321, 24 A.L.R. 1426].) An affirmative answer on

this point would not be conclusive on the point of exclusion, because it is necessary to further determine whether knowledge of the existence of the evidence in question can be attributed to a source independent of that found to be tainted. (*Nardone* v. *United States, supra; Wong Sun* v. *United States, supra;* and *Silverthorne Lbr. Co.* v. *United States, supra.*) So here, if it be assumed that defendant, as distinguished from the declarant, may assert that the evidence in the room must be excluded as the product of statements improperly elicited from the declarant he must show further that there were no independent guidelines to the discovery of this evidence. The facts rebut such a conclusion. With knowledge of defendant's participation in the telephone calls, and the use of his car by the codefendant, the officers would have been remiss in the performance of their duties if they had failed to immediately investigate in a legal manner the apparent site of the operations, before the failure of the codefendant to return would give rise to suspicions which would permit the destruction or disposition of any possible remaining supply of these ostensible peddlers.

Furthermore, it is noted that in *Wong Sun* the United States Supreme Court did not display equal solicitude for each defendant. The contraband, which would not have been discovered except for the statements improperly wrung from petitioner Toy, was excluded as to him (371 U.S. at pp. 487-488), but as to petitioner Wong Sun, the opinion states: "We must then consider the admissibility of the narcotics surrendered by Yee. Our holding, *supra,* that this ounce of heroin was inadmissible against Toy does not compel a like result with respect to Wong Sun. The exclusion of the narcotics as to Toy was required solely by their tainted relationship to information unlawfully obtained from Toy, and not by any official impropriety connected with their surrender by Yee. The seizure of this heroin invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial. Cf. *Goldstein* v. *United States,* 316 U.S. 114." (*Id.* at pp. 491-492.)

The Supreme Court of this state has recognized that one defendant may properly object to the use of illegally obtained and improperly admitted declarations of a codefendant which contain matter which is accusatory of the former, even though a cautionary instruction to only apply the evidence to the latter has been given. (See *People* v. *Aranda* (1965) 63 Cal.2d 518, 525-526 [47 Cal.Rptr. 353, 407

P.2d 265] ; *People* v. *Marbury* (1965) 63 Cal.2d 574, 578-579 [47 Cal.Rptr. 491, 407 P.2d 667] ; and *People* v. *Gilbert* (1965) 63 Cal.2d 690, 701-702 [48 Cal.Rptr. 909, 408 P.2d 365] ; and cf. *People* v. *Underwood* (1964) 61 Cal.2d 113, 124 [37 Cal.Rptr. 313, 389 P.2d 937].) No case is found, however, which says one defendant may assert objections which might properly be asserted by the declarant, when the declarant himself has not asserted them. It is obvious that the codefendant was attempting to cooperate and secure consideration for himself. Neither he nor the officers at that time could be charged with knowledge of the principles of *Dorado* or its precursor *Escobedo*. (*Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977].) Whatever the hypothesis that must be assumed between the declarant and the authorities, it is unreasonable to speculate as to what might have, or should have happened so as to relieve a third party of the consequences of what was a reasonable investigation at the time it was made. It is concluded that defendant has no standing to raise *Dorado* objections to pre-*Escobedo* declarations of a nonobjecting codefendant which are used, not to establish his guilt, but only to establish reasonable cause for his arrest or a search of the premises in which he was found. The declarations were properly before the court on the legal issues presented by the entry of defendant's room.

3. *The Search of the Room*

" [A] search is not 'incidental to an arrest' unless it is limited to the premises where the arrest is made; is contemporaneous therewith; has a definite object; and is reasonable in scope." (*People* v. *Cruz* (1964) 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889] ; and see *People* v. *Faris, supra,* 63 Cal.2d 541, 545; *People* v. *Shelton* (1964) 60 Cal.2d 740, 744 [36 Cal.Rptr. 433, 388 P.2d 665] ; *People* v. *Haven, supra,* 59 Cal.2d 713, 719; *Castaneda* v. *Superior Court* (1963) 59 Cal.2d 439, 442 [30 Cal.Rptr. 1, 380 P.2d 641] ; *Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113] ; *People* v. *Gorg, supra,* 45 Cal.2d 776, 781.) The entry and search of the hotel room cannot, therefore, be justified as incidental to the arrest of defendant's codefendant and the People concede this is so.

" [I]f the defendant or someone with apparent authority, consents to the entry, and the entry is made in good faith, it is not unlawful." (*People* v. *Howard* (1958)

166 Cal.App.2d 638, 651 [334 P.2d 105] [hearing in S.Ct. den. Feb. 25, 1959] ; and see *People* v. *Terry* (1962) 57 Cal. 2d 538, 558-559 [21 Cal.Rptr. 185, 370 P.2d 985] ; *People* v. *Burke* (1956) 47 Cal.2d 45, 49 [301 P.2d 241] ; *People* v. *Michael* (1955) 45 Cal.2d 751, 753 [290 P.2d 852] ; *People* v. *Mersino* (1965) 237 Cal.App.2d 265, 273 [46 Cal.Rptr. 821] ; *People* v. *Justiniano* (1965) 236 Cal.App.2d 542, 544 [46 Cal.Rptr. 335] ; *People* v. *Amado* (1962) 208 Cal.App.2d 780, 781-782 [25 Cal.Rptr. 539] ; *People* v. *Hughes* (1960) 183 Cal.App.2d 107, 114-115 [6 Cal.Rptr. 643] ; *People* v. *Bouchard* (1958) 161 Cal.App.2d 302, 305 [326 P.2d 646].) "Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances." (*People* v. *Michael, supra,* 45 Cal.2d at p. 753; and see *People* v. *Bilderbach, supra,* 62 Cal.2d 757, 762-763; *People* v. *Shelton, supra,* 60 Cal.2d 740, 746; *Castaneda* v. *Superior Court, supra,* 59 Cal.2d 439, 442; *People* v. *Terry, supra,* 57 Cal.2d 538, 559; *People* v. *Burke, supra,* 47 Cal.2d 45, 49; *People* v. *Gorg, supra,* 45 Cal.2d 776, 782; *People* v. *Mersino, supra,* 237 Cal.App.2d 265, 273; and *People* v. *Justiniano, supra,* 236 Cal.App.2d 542, 544.) A finding either way which is supported by substantial evidence will be upheld. (*People* v. *Bilderbach, supra; People* v. *Terry, supra; People* v. *Burke, supra; People* v. *Mersino, supra.*) It is concluded that the trial court could properly find on conflicting evidence that the codefendant consented to the entry and search of the room which he shared with defendant.

In *Castaneda* v. *Superior Court, supra,* 59 Cal.2d 439, the court found as a matter of law that the prosecution failed to discharge the burden of presenting substantial evidence of consent to the search when the most that could be inferred from the evidence was that the accused, after his arrest, sought to placate the officers and hoped that by agreeing to the search of other premises he would forestall the search of his home and the discovery of incriminating evidence. (59 Cal.2d at pp. 443-444; and see *People* v. *Faris, supra,* 63 Cal.2d 541, 545-546; *People* v. *Shelton, supra,* 60 Cal.2d 740, 745; and *People* v. *Haven, supra,* 59 Cal.2d 713, 720.) In this case, if the officers are to be believed, there was no such evasive conduct as in the last-mentioned cases. The fact that the codefendant was in custody is a matter to be considered

(*Castaneda* v. *Superior Court, supra*), but does not require a holding as a matter of law that he acted because of an unlawful assertion of authority by the officers. (*People* v. *Burke, supra; People* v. *Mersino, supra.*) It is possible for one under arrest to cooperate with the authorities. (See *People* v. *Terry, supra.*)

 A more serious problem is presented by the question of the right of the codefendant to consent to an entry and search of jointly shared living quarters in derogation of the rights of his cotenant, the defendant. In *Tompkins* v. *Superior Court, supra,* the opinion concluded: "Accordingly, we hold that one joint occupant who is away from the premises may not authorize police officers to enter and search the premises over the objection of another joint occupant who is present at the time, at least where as in this case, no prior warning is given, no emergency exists, and the officer fails even to disclose his purpose to the occupant who is present or to inform him that he has the consent of the absent occupant to enter." (59 Cal.2d 65, 69; and see *People* v. *Cruz, supra,* 61 Cal.2d 861, 866-867; *People* v. *Shelton, supra,* 60 Cal.2d 740, 745-746; *People* v. *Porter* (1964) 227 Cal.App.2d 211, 214 [38 Cal.Rptr. 621].) The limiting language of *Tompkins* (see *People* v. *Terry,* 61 Cal.2d 137, 151, fn. 9 [37 Cal.Rptr. 605, 390 P.2d 381]), suggests that a joint occupant who is at the premises is not divested of his incidents of possession and control or otherwise hampered because of a necessity to protect the privacy of his roommate. (See *People* v. *Howard, supra; People* v. *Hughes, supra;* and *People* v. *Amado, supra,* in each of which cases the accused was on the premises and entry was consented to by another.) It is concluded that where entry was effected peaceably with the consent and in the presence of one joint occupant, and without objection by the other, that the latter cannot assert a violation of his rights.

 The record does show that defendant never consented to the entry or search. His failure to object, in submission to the express or implied assertion of authority by the officers, cannot be construed as a consent. (*People* v. *Shelton, supra,* 60 Cal.2d 740, 746; *People* v. *Di Blasi* (1964) 228 Cal.App.2d 338, 342 [39 Cal.Rptr. 416]; *People* v. *Porter, supra,* 227 Cal.App.2d 211, 214-215; and see *People* v. *Cockrell* (1965) 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116].) In the absence of the effective consent of the

codefendant to, or the existence of probable cause to arrest defendant before the entry, the officers had no right to walk in uninvited by him (*People* v. *Haven, supra,* 59 Cal.2d 713, 717; *People* v. *Di Blasi, supra,* 228 Cal.App.2d 338, 341-342; *People* v. *Porter, supra,* 227 Cal.App.2d 211, 215); and in such event, a subsequent consent by defendant, as a product of the illegal conduct, could not justify a search predicated thereon. (*People* v. *Shelton, supra,* 60 Cal.2d 740, 745; *People* v. *Haven, supra,* 59 Cal.2d 713, 718; *People* v. *Di Blasi, supra,* 228 Cal.App.2d 338, 342; and *People* v. *Porter, supra,* 227 Cal.App.2d 211, 214; and see *People* v. *Bilderbach, supra,* 62 Cal.2d 757, 762.)

The borderline quality of the efficacy of the consent of the cotenant on the rights of defendant, dictates that consideration be given to the questions of whether there was reasonable cause to arrest the defendant, and if such arrest was legally effected.

## 4. *The Arrest of Defendant*

■ Even if it be assumed that there was no consent binding on defendant, to the entry and search of the room, the search was nevertheless lawful if it was incident to a valid arrest. (*People* v. *Cockrell, supra,* 63 Cal.2d 659, 665; *People* v. *Maddox* (1956) 46 Cal.2d 301, 304-305 [294 P.2d 6]; *People* v. *Martin, supra,* 45 Cal.2d 755, 762; *People* v. *Hughes, supra,* 183 Cal.App.2d 107, 115; and see *People* v. *Gilbert* (1965) 63 Cal.2d 690, 706 [48 Cal.Rptr. 909, 408 P.2d 365].) Defendant does not seriously question the existence of probable cause for arrest. ■ The facts, hereinabove mentioned in connection with the nonprejudicial effect of the admission of hearsay testimony, give rise to probable cause to believe that defendant was a coconspirator with, or aiding and abetting his codefendant in narcotics traffic. He asserts that the failure of the officers to comply with the demand and explanation requirements and provisions of section 844 of the Penal Code vitiates the arrest. A similar contention was raised in *Ker* v. *California* (1963) 374 U.S. 23 at pages 37-41 [83 S.Ct. 1623, 10 L.Ed.2d 726], wherein the United States Supreme Court upheld the right under California decisional law to enter quietly and without announcement in effecting a legal arrest so as to prevent the destruction of contraband. (See also *People* v. *Gilbert, supra,* 63 Cal.2d 690, 706-707; *People* v. *Cockrell, supra,* 63 Cal.2d 659, 665-666; *People* v. *Maddox, supra,* 46 Cal.2d 301, 305-307;

*People* v. *Martin, supra,* 45 Cal.2d 755, 762-763; and *People* v. *Ker* (1961) 195 Cal.App.2d 246, 255-256 [15 Cal.Rptr. 767].)

5. *The Sufficiency of the Evidence.*

 Defendant points to the fact that he was not a party to the telephone call giving rise to the transaction—transportation of narcotics—of which he was convicted. In fact the evidence reflects that he had not talked with the special employee for two or three weeks prior to the occasion in question. He isolates the use of his automobile and the discovery of contraband with his personal effects, and claims neither will support an inference that he did "aid and abet" in the commission of the offense charged, nor, that "not being present [he] . . . advised and encouraged its commission." (Pen. Code, § 31; and see *People* v. *Belenger* (1963) 222 Cal.App.2d 159, 162-167 [34 Cal.Rptr. 918]; *People* v. *Pearl* (1963) 211 Cal.App.2d 783, 789-790 [27 Cal. Rptr. 664]; and *People* v. *Hill* (1946) 77 Cal.App.2d 287, 293-294 [175 P.2d 45].) In *People* v. *Belenger, supra,* it is said: "An aider and abettor is 'liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged.' *(People* v. *Villa, supra,* 156 Cal. App.2d 128, 134 [318 P.2d 828].) In this case, defendant knew of the wrongfulness of Burton's acts. He must have known that the use of the automobile was necessary to completion of the crime, and surrendered possession and control of the automobile to the wrongdoer. In *People* v. *Ellhamer* (1962) 199 Cal.App.2d 777, the court noted at page 782 [18 Cal.Rptr. 905] : 'Although the guilt of the aider and abettor is dependent upon the actor's crime, the criminal intent of the aider and abettor is *presumed* from his actions with knowledge of the actor's wrongful purpose.' [Italics added.] Therefore, there was sufficient evidence for the trial court to have found that defendant aided and abetted Burton in the commission of the crime." (222 Cal.App.2d at pp. 166-167.) The use of defendant's automobile by one with whom he resides will support the inference that the surrender of possession and control was conscious and permissive. The presence of defendant in the room immediately after the apprehension of his codefendant gives rise to the inference that he was there a few minutes before and witnessed the codefendant's preparations for departure on his illicit mission. A finding of knowledge of the particular nefarious act with which he is charged is further supported by his participation

in the general conversations between the special employee and the occupants of the room, by his particular representation's in his last such conversation that, "I'll get some tomorrow or Saturday . . . I'm not Mannie, but I'll have something," and by the storage of contraband with his personal effects. He is therefore, as in *Belenger*, charged with knowledge of and participation in the particular offense which was committed. Even if this were not so, his general course of conduct in keeping the ostensible prospective customer receptive, coupled with the surrender of possession of his car may well be considered as advising and encouraging the offense of transportation, which as a necessary step in the proposed sale, was thereby contemplated, and in fact resulted. (Cf. *People* v. *Pearl, supra.*) The protective cloak of innocence found in *People* v. *Hill, supra,* is herein shredded by defendant's acknowledged familiarity with the general negotiations for the sale, and his manifest cognizance of the presence of contraband of a type which presumably would be transported to effect that transaction in the car he suffered his roommate to use.

The judgment is affirmed.

Sullivan, P. J., and Molinari, J., concurred.

A petition for a rehearing was denied February 18, 1966, and appellant's petition for a hearing by the Supreme Court was denied March 22, 1966.